THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES GARBACCIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION, LAXMAN NARASIMHAN, and RACHEL RUGGERI,<br><br>Defendants. | Case No. 2:24-cv-01362-JHC<br><br>**DEFENDANTS' MOTION TO RECONSIDER ORDER ON MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR:** December 3, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## I.    INTRODUCTION

This Court dismissed all but four of the Challenged Statements in its November 19, 2025 Order, finding that Plaintiffs alleged—at most—that some U.S. Starbucks stores began having problems only in January 2024, *after* many of the Challenged Statements.  Dkt. 49 ("Order").[1] The remaining Defendants, Starbucks Corporation and Laxman Narsimhan, respectfully request that the Court reconsider its ruling and dismiss Narsimhan's remaining four statements because the same finding dooms those, too:  Narsimhan was discussing the Company's performance during the quarter *ending December 31, 2024*, before any alleged in-store problems began.

The Ninth Circuit's recently published decision in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), compels reconsideration on both falsity and scienter grounds.  *Sneed* requires that in determining falsity, the Court look at each statement in "context," including its "surrounding text."  *Id.* at 1131-32.  The context of Narsimhan's remaining four statements is the Company's earnings call for the completed 1Q24 quarter, during which Narsimhan discussed that quarter's results.  No reasonable investor would have believed that Narsimhan was discussing results from *January*, *i.e.*, the first month of the not-yet completed 2Q24 quarter.  But even if any statements were ambiguous as to timing, *Sneed* also raises the bar for pleading scienter where the challenged statements "are not ***flagrantly false*."  *Id*. at 1134.  Here, the Court properly held that Plaintiffs' scienter allegations were inadequate as to Defendant Rachel Ruggeri and dismissed her from the case.  Order at 42, 46.  Under *Sneed*, however, Plaintiffs' allegations are also inadequate as to Narsimhan because none of his statements were "flagrantly false," and Plaintiffs failed to allege particularized facts that Narsimhan was aware of any "issues" that supposedly began in January, let alone that he had any motive to mislead investors about them.  Defendants respectfully request the Court reconsider its decision, and dismiss the entirety of the Complaint.

---

[1] Defined terms have the same meaning as in Defendants' Motion (Dkt. 42) and Reply (Dkt. 47). The remaining statements are portions of statements listed in ¶¶43-45, 48.  Order at 31, 33.

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 1
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## II.   ARGUMENT

Local Rule 7(h)(1) allows the Court to grant reconsideration upon a "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."

### A.   The Court's Decision

Plaintiffs' Complaint challenged statements made on November 2, 2023 about the Company's 4Q23 results, and January 30, 2024 regarding the Company's 1Q24 results.  Plaintiffs claimed that the Challenged Statements were false because Defendants did not disclose that some stores were experiencing staffing problems and other in-store issues.  Order at 23-24.  The Court dismissed the 4Q23 statements, holding that Plaintiffs failed to allege facts that in-store issues began before January 2024.  *Id*. at 23-29.  But it determined that Plaintiffs had plausibly alleged falsity for certain 1Q24 statements because investors could have been misled about whether those statements pertained to the Company's business during January 2024.  Order at 30-36.[2]  On scienter, the Court found Plaintiffs "alleged scienter as to Defendant Narasimhan," but held Plaintiffs' allegations about Ruggeri did not satisfy the PSLRA's "high pleading standards," thus dismissing all claims against Ruggeri.  *Id*. at 40-42.

The Court's Order—through both its falsity and scienter rulings—allows four statements made by Narsimhan to proceed:  one regarding the Reinvention Plan (¶48), and three regarding Starbucks Rewards members (¶¶43-45).  Order at 31, 33 (quoting remaining portions of ¶¶43-45, 48).  This motion follows.

### B.   *Sneed* Requires Reconsideration of the Court's Falsity Ruling

After the motion to dismiss briefing, the Ninth Circuit issued a published decision, *Sneed*

---

[2] The Court found Plaintiffs adequately alleged falsity for seven of the 1Q24 statements, but three of them were made by Ruggeri (¶¶49-51)—including a statement in the Form 10-Q (signed only by Ruggeri, ¶51)—and therefore fall within the Court's dismissal ruling.  Order at 41-42; *see also Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1061 (9th Cir. 2000) (must show that signer of SEC filing acted with scienter).  The Court also dismissed other 1Q24 statements (by both Ruggeri and Narasimhan) on the ground that the statements accurately reported historical results and as nonactionable puffery.  Order at 30-35.

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 2
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025), holding that the Court must assess whether a statement is misleading *in context*. That context includes the statement's "surrounding text." *Id*. Here, none of Narsimhan's four remaining statements concerned the Company's performance—or whether it was experiencing "problems" like increased wait times—in January 2024. Instead, as he made clear at the outset of the January 30 earnings call, Narasimhan provided "an overview of [the Company's] business performance in [its] *first quarter of fiscal 2024*," which ended December 31, 2023. Ex. 11 at 4. Because all four remaining statements pertain to the completed 1Q24 results, no reasonable investor would have been misled about problems that allegedly arose *after* 1Q24 ended, in the few weeks before the January 30, 2024 earnings call.

**Statement at ¶48:** Starting with the remaining Reinvention Plan statement in ¶48, Plaintiffs challenge Narasimhan's statement that Starbucks was "investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency." The very next sentence makes clear, however, that Narasimhan was discussing the Company's 1Q24 results: "*In the quarter*, we have seen the effectiveness of Reinvention-driven investments we have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners." *Id*. Indeed, Narasimhan provided specific (and accurate) statistics supporting his statement—turnover decreased 5%, and partner hours increased 10%. Order at 31 (dismissing metrics as true). The ¶48 statement commented only on those completed-quarter results. *See Sneed*, 147 F.4th at 1131-32; *Kasilingam v. StitchFix*, 2022 WL 10966359, at *2 (9th Cir. 2022) (dismissing where statement referred to "the third quarter," "not the fourth quarter"); *In re Stitch Fix, Inc. Sec. Litig.*, 2020 WL 5847506, at *5 (N.D. Cal. Sept. 30, 2020) ("in context," statement was "an observation about" past quarter, not "how the company was doing as of the time of the statement").

**Statements at ¶¶43-45:** The same is true for the three remaining Starbucks Rewards-members statements in ¶¶43-45. The Court held the ¶43 statement—"[i]n short, our growing Starbucks Rewards members are visiting our stores more frequently and increasing their spend

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 3
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

each time that they come"—was plausibly false because in 2Q24 (January–March 2024), Rewards-member traffic ultimately decreased quarter-over-quarter, such that it was possible traffic had decreased by January. Order at 33. But under *Sneed*, context matters—and when read in context, this statement was not about January traffic. Instead, it was a concluding sentence after Narasimhan walked investors "through the details" about the Company's "performance in the [completed] quarter," including that "spend per member reached a record in Q1," as "active Rewards members gr[ew] 13%"—results that are undisputed. Ex. 11 at 4; Order at 34; *see Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016). Likewise, Narasimhan's ¶45 statement—that "customers remain loyal and, in fact, increased their frequency of spend *in the quarter*"—was, on its face, referring to 1Q24 results.

The final remaining statement in ¶44 was in response to an analyst, who asked whether Starbucks had "also seen a slowdown in traffic with rewards customers." Ex. 11 at 16. The analyst's question referred to Narasimhan's opening remarks about "headwinds" during 1Q24, including that "occasional US customers … came in less frequently." *Id*. at 5. Narasimhan answered that Starbucks "*did see* as you rightfully said, a slowdown in the very occasional customer," but not a slowdown in "SR customers," who "are buying more." *Id*. at 16; Order at 33 (quoting ¶44). Read in that context, the analyst was asking specifically about 1Q24 traffic, and Narasimhan responded in kind.

Accordingly, when Narismhan's remaining four statements are read in context, no reasonable investor could have been misled about post-1Q24 customer traffic during the few weeks leading up to the January 30 earnings call. Indeed, when Defendants discussed what they were seeing in January, they expressly said so. Ex. 11 at 13 ("January has been softer than expected").

### C.    Plaintiffs Do Not Allege Narasimhan's Scienter

The Ninth Circuit's recent *Sneed* decision also requires reconsideration of the Court's holding that Plaintiffs adequately pled Narasimhan acted with scienter. *See* Order at 40-41. As *Sneed* explained, "[s]howing scienter necessarily becomes harder when the allegedly misleading

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 4
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

statements are not *flagrantly false* because in those cases *an innocent alternative explanation becomes more likely*." 147 F.4th at 1134.

None of the remaining statements is "flagrantly false." To the contrary, the statements concern the Company's accurate 1Q24 results, and Plaintiffs allege zero facts suggesting that Narasimhan did anything but "truthfully highlight" that 1Q24 performance. *Id.* Regardless, even if there were ambiguity as to whether the statements touched on the Company's January 2024 performance, they were not "*flagrantly false*." Indeed, as the Court recognized, none of the statements said "anything about" the only two allegedly omitted "facts"—*i.e.*, purported increased wait times and decreased order-completion rates in January, Order at 32-33—meaning those "facts" cannot render flagrantly false statements that do not even mention those topics. And without a "flagrantly false" statement, Plaintiffs do not meet the even higher bar to plead a "cogent" and "compelling" inference of Narasimhan's scienter under *Sneed*. Just the opposite, *Sneed* directly forecloses Plaintiffs' reliance on their generic scienter allegations and the core-operations doctrine.[3]

In its Order, the Court held that Plaintiffs adequately alleged two facts were omitted that rendered the four remaining statements misleading: (1) by January 30, wait times at 8% of stores had increased as compared to that quarter *five years earlier*, Order at 30-32; Ex. 13 at 1; and (2) it was possible that by January, members were increasingly abandoning orders, Order at 33. But Plaintiffs do not allege with particularity that Narasimhan learned of January wait-time or order-abandonment data (especially as compared to five *years* earlier) at the time of the January 30 earnings call. At most, Plaintiffs say Narasimhan was "involved in the company's day-to-day operations," had "access to key information related to staffing," monitored the Reinvention Plan's progress, and publicly stated that he monitored "staffing and scheduling" (but not wait times or mobile-order statistics). Order at 41; ¶¶54-62. As this Court explained in *Joyce v. Amazon.com,*

---

[3] The *Sneed* decision confirms that the Court correctly dismissed Ruggeri, as none of Plaintiffs' generalized allegations plead an inference she acted with scienter. Order at 42.

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 5
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Inc.*, 2023 WL 8370101, at \*14 (W.D. Wash. Dec. 4, 2023), however, "Plaintiffs must specifically allege where, when, and how the Individual Defendants became aware of information contradicting their challenged statements." Plaintiffs do not even attempt to do so, ¶¶54-62, and thus "fail to connect [Narasimhan's] hands-on management with any information" contradicting his statements. *Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla Inc.*, 2025 WL 3459471, at \*2 (9th Cir. Dec. 2, 2025); *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) ("hands-on style" plus "generalized access to reports" insufficient).[4]

Without a single particularized fact that Narasimhan was aware of the alleged omitted "facts" about wait times or order abandonment—much less *any* fact suggesting Narasimhan knew those "facts" contradicted his statements that said nothing about those topics, Order at 33—Plaintiffs asked the Court to infer scienter using the "core operations" doctrine, ¶54, which the Court did. Order at 42. But the *Sneed* decision forecloses reliance on that theory here: the core-operations doctrine only allows the Court to infer scienter in cases "where the ***falsity is patently obvious***," *Sneed*, 147 F.4th at 1134; for example, when a company claimed it "had sold one million SUVs" but the "actual number was zero." *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008). Narasimhan's four remaining statements were not false—and certainly not patently so. *See* Order at 33. Instead, the "facts in the pleadings do not establish a strong inference of scienter because it is more probable" that Narasimhan believed his statements—all of which were grounded in undisputed 1Q24 data. *Sneed*, 147 4th at 1134.

## III.   CONCLUSION

Defendants request that the Court reconsider its Order.

---

[4] Plaintiffs also allege Narasimhan's resignation supported scienter. But as this Court recognized in *Joyce*, the Ninth Circuit has rejected that, too: "the timing of [a] departure" alone does not "allege sufficient information to differentiate between a suspicious change in personnel and a benign one." 2023 WL 8370101, at \*14. There is nothing suspicious about Narasimhan's departure, which occurred *four months* after the Class Period.

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 6
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Respectfully submitted this 3rd day of December, 2025.

I certify that this memorandum contains 2,094 words in compliance with the Local Civil Rules.

**K&L GATES LLP**

*/s/ Tyler K. Lichter*
Tyler K. Lichter, WSBA # 51090
925 Fourth Avenue, Suite 2900 Seattle, Washington 98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: Tyler.Lichter@klgates.com

**LATHAM & WATKINS LLP**

ANDREW B. CLUBOK (*pro hac vice*)
SUSAN E. ENGEL (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: 202/637-3309
202/637-2201 (fax)
andrew.clubok@lw.com
susan.engel@lw.com

MICHELE D. JOHNSON (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: 714/540-1235
755/540-8290 (fax)
michele.johnson@lw.com

WHITNEY B. WEBER (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415/391-0600
415/395-8095 (fax)
whitney.weber@lw.com

*Attorneys for Defendants Starbucks Corporation, Laxman Narasimhan, and Rachel Ruggeri*

DEFENDANTS' MOTION TO RECONSIDER
ORDER ON MOTION TO DISMISS
CONSOLIDATED COMPLAINT - 7
NO. 2:24-CV-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022