THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES GARBACCIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION, LAXMAN NARASIMHAN, and RACHEL RUGGERI,<br><br>Defendants. | Case No. 2:24-cv-01362-JHC<br><br>**DEFENDANTS' ANSWER TO CONSOLIDATED COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**<br><br>**JURY DEMAND** |

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Defendants Starbucks Corporation ("Starbucks" or the "Company"), Laxman Narasimhan, and Rachel Ruggeri (collectively, "Defendants"), by and through their attorneys of record, hereby answer and assert defenses to the claims and allegations made by Lead Plaintiffs Pavers & Road Builders District Council Pension Fund, Teamsters Local 237 Additional Security Benefit Fund, and Teamsters Local 237 Supplemental Fund for Housing Authority Employees (collectively, "Lead Plaintiffs"), in their Consolidated Complaint for Violation of Federal Securities Laws (the "Complaint") (Dkt. 39). To the extent not expressly admitted, Defendants deny all allegations in the Complaint, including all allegations contained in section headings, footnotes, or other portions of the Complaint that are not contained within the specifically numbered paragraphs of the Complaint. Likewise, to the extent that headings and subheadings in the Complaint are intended to constitute factual allegations, Defendants deny the allegations insofar as they relate to Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the Complaint's headings or subheadings and therefore deny those allegations on that basis.

Defendants' responses are made upon information and belief and may change subject to further investigation. Defendants expressly reserve the right to amend their Answer, or seek leave to amend their Answer, and to modify and/or assert all claims, defenses, counterclaims, and third-party claims permitted by law. Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint. In addition, the Complaint included bold and italicized emphases, which are replicated in the quoted paragraphs.

## PLAINTIFFS' PREAMBLE

Lead Plaintiffs Pavers & Road Builders District Council Pension Fund, Teamsters Local 237 Additional Security Benefit Fund, and Teamsters Local 237 Supplemental Fund for Housing Authority Employees (collectively, "Lead Plaintiffs"), by and through their counsel Robbins

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT- 1
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

Geller Rudman & Dowd LLP, allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters.[1]

**ANSWER**:  Defendants admit that Plaintiffs purport to bring claims against Defendants by and through their counsel.  Defendants lack information sufficient to form a belief as to the truth of the allegations in the remainder of the preamble and in footnote one, and deny the allegations on that basis.  Except as expressly admitted, Defendants deny the remaining allegations in the preamble, and in footnote one, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**I.     INTRODUCTION**

1.      This securities class action is brought on behalf of Lead Plaintiffs and all other persons that purchased or otherwise acquired Starbucks common stock between November 2, 2023 and April 30, 2024, inclusive (the "Class Period"), and were damaged thereby (the "Class"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

**ANSWER**:  Defendants admit that the Complaint (Dkt. 39) purports to assert against Defendants claims arising under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  Defendants aver that on December 12, 2025, the Court dismissed from the Complaint any statements made between November 2, 2023 and January 29, 2024 (Dkt. 58 ("Order")).  Accordingly, although the Complaint purported to assert claims on behalf of purchasers of Starbucks common stock between November 2, 2023 and April 30, 2024, the action is now limited to asserting claims on behalf of purchasers of Starbucks common stock between January 30, 2024

---

[1] Lead Plaintiffs' information and belief is based on, among other things, the independent investigation of counsel, which includes, but is not limited to, a review and analysis of: (a) Starbucks Corporation's ("Starbucks" or the "Company") public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) transcripts of Starbucks' senior management's conference calls with investors and analysts; (c) releases and media reports issued about and disseminated by the Company; (d) analyst reports issued about Starbucks; (e) interviews of former Starbucks employees; (f) other public information and data regarding the Company; and (g) documents cited herein. Lead Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 2
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

and April 30, 2024, inclusive (the "Putative Class Period"). Except as expressly admitted, Defendants deny the remaining allegations, including Plaintiffs' characterization of the events at issue and legal conclusions.

2. Starbucks is an iconic brand and the largest coffee chain in the world. The majority of Starbucks' revenue comes from selling handcrafted beverages (coffee and tea) in its company operated stores located in the United States and China, its largest and second largest markets, respectively. This case centers on Defendants' concerted effort to hide from investors that store traffic (or transactions) – a Starbucks financial metric that reports the number of sales at existing company-operated stores – in these two important markets was declining. During the Class Period, Defendants knew but failed to disclose that systemic understaffing at U.S. company-operated stores was causing frustratingly long wait times and driving customers away, while aggressive price wars by Starbucks' competitors were causing store traffic to decline in China.

**ANSWER**: With regard to the first sentence, Defendants aver that Starbucks is the premier roaster, marketer, and retailer of specialty coffee in the world. With regard to the second sentence, Defendants aver that in the first quarter of fiscal year 2024 (for the quarterly period ended December 31, 2023 ("1Q24")), the Company generated 82.3% of its revenues from Company-operated stores (about 82% of which was generated from North America-operated stores, which includes the U.S., and about 18% of which was generated from International-operated stores, which includes China); and in the second quarter of fiscal year 2024 (for the quarterly period ended March 31, 2024, "2Q24"), the Company generated 82.4% of its revenues from Company-operated stores (about 81% of which was generated from North America-operated stores, which includes the U.S., and about 19% of which was generated from International-operated stores, which includes China). With regard to the third sentence, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions. Defendants aver that during the Putative Class Period, the Company disclosed a "comparable store sales" operating metric, which is impacted by two sub-metrics that Starbucks reported each quarter: "average

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 3
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

ticket" (*i.e.*, spend per transaction) and "comparable transactions" (*i.e.*, total customer orders, or customer traffic). With regard to the fourth sentence, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

3.     Leading into the Class Period, the Starbucks brand, built on the customer's in-store experience, was facing headwinds as in-store operations were being overloaded by customized beverage options and mobile orders. To turn this around, Starbucks and its executives publicly introduced reinvention plans that were designed to make Starbucks' store operations more efficient and boost sales growth both in the United States and China. During the Class Period, Defendants told investors that the reinvention plans were "fueling revenue growth" and delivering "improved partner and customer experiences," store "traffic continues to be strong and it's growing," and the reinvention plans were creating "exciting momentum in China."

**ANSWER**:  With regard to the first sentence, Defendants aver that the phrases "[l]eading into the Class Period," "facing headwinds," and "overloaded by customized beverage options and mobile orders" are vague and ambiguous and deny the allegations on that basis. With regard to the second and third sentences, Defendants aver that Plaintiffs purport to summarize statements made by Defendants without specifying who made the alleged statements or when or how they were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

4.     In truth, Defendants were aware or recklessly disregarded that the reinvention plans were not delivering the results Defendants claimed. Rather, the reinvention plans were causing U.S. store traffic to decline. Unbeknownst to investors, in implementing the reinvention plans, Starbucks slashed staff in order to cut costs and employed a proprietary algorithm (the SPA tool) to allocate the remaining employees – whom Starbucks calls "partners." But the algorithm fatally

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 4
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

underestimated the number of partner hours needed in-store by failing to account for the extra time required to accommodate increasingly popular beverage customizations, such as cold foam or extra espresso shots. This was leading to understaffing in nearly one-third of Starbucks' U.S. stores. The understaffing problems were compounded by a Company roll out of numerous new menu offerings, spikes in store traffic from increased promotions, and increasing and conflicting demands placed on partners due to surging mobile orders. As a result of these problems, the Company was experiencing widespread longer wait times at U.S. stores, which were driving customers away and decreasing store traffic.

**ANSWER**: Defendants admit that the Company refers to its employees as "partners." Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

5.    In China, the reinvention plans were likewise failing, and Starbucks was facing mounting competition from specialty coffee chains, local cafés, and premium brands, leading to a sharp store traffic decline. Rivals aggressively cut prices, expanded faster, and dominated the takeout market, leaving the Company unable to compete.

**ANSWER**:   Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions. Defendants further aver that on December 12, 2025, the Court's Order dismissed all statements Plaintiffs challenged regarding the Company's China business, and thus, no response to such allegations is required.

6.    Defendants knew or were reckless in not knowing that their Class Period statements were misleading when made. The fraud involved Starbucks' two largest markets, the United States and China. Further, the Individual Defendants were Starbucks' top two executives – the Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") – who repeatedly professed on conference calls with investors their knowledge of: (a) progress on the reinvention plans and their impact on the Company's financial performance; (b) efforts to improve partner scheduling and

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 5
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

staffing; and (c) consumer demand through Defendants' close tracking of over 75 million customers using the Starbucks mobile app.

**ANSWER**:  With regard to the first and second sentences, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions.  Defendants aver that on December 12, 2025, the Court's Order dismissed all statements Plaintiffs' Complaint challenged regarding the Company's China business, and most statements regarding its business in the United States, and thus, no response to such allegations is required.  With regard to the third sentence, Defendants admit that the Complaint purports to refer to Narasimhan and Ruggeri as "Individual Defendants," and that during the Putative Class Period, Narasimhan served as the Company's Chief Executive Officer ("CEO") and that Ruggeri served as its Chief Financial Officer ("CFO").  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

7.    The relevant truth concealed by Defendants' fraud was revealed to investors on April 30, 2024, when Starbucks released its Q2 2024 earnings results.[2] The Company shocked investors, reporting that North America and U.S. comparable store sales declined 3%, driven by a 7% decline in store traffic, and China comparable store sales declined 11%, driven by a 4% decline in store traffic. Defendants also admitted that longer wait times contributed to the miss and "intense price competition" contributed to the decline in China. Several analysts noted that Starbucks Q2 2024 performance was the weakest store traffic performance outside of the pandemic and the global financial crisis. In response to the Q2 2024 earnings results, the price of Starbucks common stock plummeted nearly 15%, causing Lead Plaintiffs and other investors to suffer significant losses.

**ANSWER**:  With regard to the first and second sentences, Defendants admit that on April 30, 2024, Starbucks released its financial results for its 2Q24, including that North America and U.S.

---

[2] The letter "Q" stands for the Company's fiscal quarter of its fiscal year ("FY"); thus Q2 2024 is Starbuck's second fiscal quarter for FY 2024.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 6
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

comparable store sales declined 3%, driven by a 7% decline in comparable transactions, partially offset by a 4% increase in average ticket; and that China comparable store sales declined 11%, driven by an 8% decline in average ticket and a 4% decline in comparable transactions. Defendants aver that on December 12, 2025, the Court's Order dismissed nearly all statements Plaintiffs' Complaint challenged, including all statements regarding the Company's China business. Defendants further aver that the price of Starbucks stock is publicly available. With respect to footnote two, Defendants admit that the Complaint uses a defined term of "Q" to refer to the Company's fiscal quarter such that "Q2 2024" refers to the Company's second fiscal quarter for its fiscal year 2024. Except as expressly admitted, Defendants deny the allegations in the paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## II.    JURISDICTION

8. The claims alleged herein arise under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

**ANSWER**: Defendants admit that the Complaint purports to assert claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

**ANSWER**: Defendants admit that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

10. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §§1391(b)-(c) because at all relevant times Starbucks maintained its corporate headquarters in this District.

**ANSWER**: Defendants admit that venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §§1391(b)-(c) because Starbucks maintained its corporate headquarters in this District during the Putative Class Period.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 7
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

11.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce of the United States, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

III.    **PARTIES**

    A.      **Lead Plaintiffs**

12.     Lead Plaintiff Pavers & Road Builders District Council Pension Fund is a multiemployer defined benefit fund with more than $300 million in assets under management operated for the benefit of thousands of participants, pensioners, and beneficiaries. As set forth in its previously filed certification, Pavers & Road Builders District Council Pension Fund acquired Starbucks common stock at artificially inflated prices during the Class Period and was damaged thereby. ECF 15-2, 15-3.

**ANSWER**:  With regard to the first sentence, Defendants lack information sufficient to form a belief as to the truth of the allegations and on that basis deny such allegations.  With regard to the second sentence, Defendants admit that Lead Plaintiff Pavers & Road Builders District Council Pension Fund filed a certification (Dkt. 15-2) that purports to reflect records of purchases of Starbucks common stock by Lead Plaintiff, but Defendants lack information sufficient to form a belief as to the veracity of those records and on that basis deny the allegations.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

13.     Lead Plaintiffs Teamsters Local 237 Additional Security Benefit Fund and Teamsters Local 237 Supplemental Fund for Housing Authority Employees (collectively, the "Teamsters Local 237 Funds") are multi-employer defined benefit plans with more than $400 million in assets under management operated for the benefit of thousands of participants,

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 8
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

pensioners, and beneficiaries. As set forth in their previously filed certification, the Teamsters Local 237 Funds acquired Starbucks common stock at artificially inflated prices during the Class Period and were damaged thereby. *Id*.

**ANSWER**: With regard to the first sentence, Defendants lack information sufficient to form a belief as to the truth of the allegations and on that basis deny the allegations. With regard to the second sentence, Defendants admit that Lead Plaintiffs Teamsters Local 237 Additional Security Benefit Fund and Teamsters Local 237 Supplemental Fund for Housing Authority Employees filed certifications (Dkt. 15-2) that purport to reflect records of purchases of Starbucks common stock by Lead Plaintiffs, but Defendants lack information sufficient to form a belief as to the veracity of those records and on that basis deny the allegations. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

### B.    Defendants

14.    Defendant Starbucks Corporation is a global premier roaster, marketer, and retailer of specialty coffee incorporated under the laws of the state of Washington and headquartered in Seattle, Washington. Starbucks common stock trades in an efficient market on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "SBUX."

**ANSWER**: With regard to the first sentence, Defendants admit that Starbucks is the premier roaster, marketer, and retailer of specialty coffee in the world, and that Starbucks is incorporated under the laws of the state of Washington and is headquartered in Seattle, Washington. With regard to the second sentence, Defendants admit Starbucks common stock trades on the Nasdaq Global Select Market under the ticker symbol "SBUX," and aver that the phrase "efficient market" is vague and ambiguous and deny the allegation on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 9
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

15.    Defendant Laxman Narasimhan was, at all relevant times, Starbucks' CEO and a member of Starbucks' Board of Directors ("Board"). Narasimhan joined Starbucks as CEO-elect on October 1, 2022 and assumed the role of CEO and joined the Board on March 20, 2023. On August 13, 2024, Narasimhan was abruptly removed as Starbucks' CEO and Board member.

**ANSWER**:    With regard to the first and second sentences, Defendants admit that Laxman Narasimhan joined Starbucks as incoming CEO on or about October 1, 2022, and assumed the role of CEO and joined the Company's Board of Directors on or about March 20, 2023.  With regard to the third sentence, Defendants admit that Laxman Narasimhan stepped down as CEO and as a director on or about August 13, 2024.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

16.    Defendant Rachel Ruggeri was the Executive Vice President and CFO of Starbucks at all relevant times, and currently holds this position. Ruggeri joined Starbucks in 2001 as a member of the accounting team and held various leadership positions at the Company before being named CFO in 2021. After Narasimhan's departure from the Company in August 2024, Ruggeri served as interim CEO before Brian Niccol began his tenure as the new CEO of Starbucks.

**ANSWER**:    With regard to the first and second sentences, Defendants aver that Rachel Ruggeri served as Executive Vice President and CFO of Starbucks from February 2021 to approximately March 2025, and that she worked for the Company on-and-off for nearly 20 years in many different roles.  With regard to the third sentence, Defendants admit that Rachel Ruggeri served as interim CEO after Narasimhan stepped down as CEO on or around August 2024, and that Brian Niccol became the subsequent CEO of Starbucks.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 10
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

17. Defendants Narasimhan and Ruggeri are collectively referred to herein as the "Individual Defendants." The Individual Defendants and Starbucks are collectively referred to herein as "Defendants."

**ANSWER**: With regard to the first sentence, Defendants admit that the Complaint uses a defined term of "Individual Defendants" to refer to Narasimhan and Ruggeri. With regard to the second sentence, Defendants admit that the Complaint uses a defined term of "Defendants" to refer to Narasimhan, Ruggeri, and Starbucks. Except as expressly admitted, Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

18. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Starbucks' quarterly reports, shareholder letters, press releases and other public statements, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of Starbucks' reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company and their access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and knew that the positive representations being made were then materially false.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## IV.   FACTUAL BACKGROUND

### A.   Starbucks Expands to the Largest Coffee House Chain in the World

19. Starbucks is the world's largest coffee chain and is one of the most recognized brands in the world. The Company first opened its doors on March 30, 1971 in Seattle's historic Pike Place Market. Early on, the Company focused on traditional whole bean coffee and leaf teas.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 11
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

That changed under the leadership of Howard Schultz, Starbucks' long-time Chairman and CEO. Schultz joined the Company in 1982 as Director of Operations and Marketing. In 1983, he traveled to Italy where he became enthralled with Italian coffee bars and the coffee experience. Schultz envisioned introducing the concept of the Italian coffeehouse to the American market. He left Starbucks to open his own coffeehouses, Il Giornale, only to return to Starbucks in August 1987 as CEO to purchase the Company.

**ANSWER**:  With regard to the first sentence, Defendants aver that Starbucks is the premier roaster, marketer, and retailer of specialty coffee in the world.  With regard to the second and third sentences, Defendants aver that Starbucks opened its first store in 1971 in Seattle's historic Pike Place Market, offering fresh-roasted coffee beans, tea, and spices from around the world for its customers to take home.  With regard to the fourth and fifth sentences, Defendants aver that Howard Schultz joined Starbucks Coffee Company, a predecessor to the Company, in 1982 and served as its director of retail operations and marketing.  With regard to the sixth and seventh sentences, Defendants aver that in 1983, Schultz travelled to Milan and experienced Italy's coffeehouses, returning to Seattle inspired to bring the warmth and artistry of Italy's coffee culture to Starbucks.  With regard to the eighth sentence, Defendants aver that in 1985, Schultz founded and served as the chairman of the board and CEO of Il Giornale Coffee Company, a predecessor to the Company, and that in or around August 1987, Il Giornale Coffee Company acquired the Company's assets and adopted the Starbucks name.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

20.	Schultz transformed Starbucks into the global coffeehouse behemoth that it is today. Starbucks describes itself as the "premier roaster, marketer and retailer of specialty coffee in the world." Starbucks sells its roasted coffee, handcrafted beverages and food items through its company-operated stores worldwide, which are the mainstay of its business. At the end of FY 2023, Starbucks had over 19,000 company-operated stores globally. Starbucks' largest and most

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 12
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

important market is the United States. At the end of FY 2023, Starbucks had 9,654 U.S. company operated stores that accounted for over 70% of the Company's net revenues. China – the Company's largest market outside the United States – accounted for another 6,804 company operated stores by the end of FY 2023.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "transformed" and "global coffeehouse behemoth" are vague and ambiguous, and deny the allegations on that basis. With regard to the second sentence, Defendants admit that Starbucks is the premier roaster, marketer, and retailer of specialty coffee in the world, and aver that the sentence purports to summarize statements made by Starbucks without specifying when or how the statements were made.  Defendants thus lack information sufficient to form a belief as to the truth of those allegations and deny them on that basis.  With regard to the third sentence, Defendants aver that the phrase "mainstay of its business" is vague and ambiguous and deny the allegations on that basis.  With regard to the fourth sentence, Defendants aver that as of October 1, 2023, Starbucks had 19,592 Company-operated stores globally.  With regard to the fifth sentence, Defendants aver that the phrase "most important" is vague and ambiguous and thus deny the allegations on that basis.  With regard to the sixth sentence, Defendants aver that as of October 1, 2023 (the end of the Company's fiscal year 2023, "FY23"), the Company had 9,645 U.S. Company-operated stores, and that net revenue for Company-operated stores in North America (which includes the U.S.) generated approximately 66.4% of the Company's total FY23 revenue.  With regard to the seventh sentence, Defendants admit that Starbucks had 6,804 Company-operated stores in China at the end of FY23, which constituted the second-largest country by number of stores that the Company operated.  Defendants admit that as of FY 2023, China was the Company's second largest market by net revenue after the United States.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 13
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

21.     Starbucks' brand identity, and the core component of its business strategy, is what the Company calls the "Starbucks Experience." The Starbucks Experience prioritizes product quality and a personalized and consistent customer experience between Starbucks customers and the Company's employees – called "partners" – who make the drinks and work in-store. The Starbucks Experience was the foundation of the Company's decades-long track record of success, fueling both strong customer loyalty and robust financial performance.

**ANSWER**:  With regard to the first sentence, Defendants aver that the phrases "brand identity" and "core component of its business strategy" are vague and ambiguous and deny the allegations on that basis.  With regard to the second sentence, Defendants aver that the Company provides its customers with a unique Starbucks Experience built upon superior customer service, convenience and a seamless digital experience, as well as safe, clean and well-maintained stores that reflect the personalities of the communities in which they operate.  Defendants further admit that all Starbucks employees are referred to as "partners."  With regard to the third sentence, Defendants aver that the phrases "foundation of the Company's decades-long track record of success," "strong customer loyalty," and "robust financial performance" are vague and ambiguous and deny the allegations on that basis.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

B.     **Amid Growing in-Store Inefficiencies, Struggling Sales in China, and Falling Profit Margins, in September 2022 Starbucks Introduces an Aggressive Three-Year "Reinvention Plan" and Incoming CEO Narasimhan**

22.     By 2022, Starbucks was facing business challenges on multiple fronts. Customer preferences and buying habits were changing from a simple cup of brewed coffee. Starbucks had pioneered the highly customized coffee drink, allowing customers to add extra espresso shots, additional pumps of syrup or a cold foam topping, which took longer for partners to execute. By Q4 2022, there were over 170,000 ways to customize a Starbucks drink and 383 billion different possibilities for a latte. Also, surging mobile app orders were significantly impacting in-store

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 14
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

operations by overwhelming partners with a high volume of pre-ordered drinks that partners had to juggle with in-store and drive-thru orders. As a result, the in-store operations were becoming increasingly inefficient with congestion at the drink pick-up areas and a less personalized customer experience as partners were forced to prioritize order fulfillment. Partners were likewise frustrated about changing customer preferences and the increase in mobile orders, as these changes were adding complexity and time for the partners to execute orders. At the same time, Starbucks was also facing struggling sales and losing market share in China – its largest market outside of the United States.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "facing business challenges" and "multiple fronts" are vague and ambiguous and deny the allegations on that basis. With regard to the second through eighth sentences, Defendants aver that each sentence appears to summarize information provided by unnamed sources without specifying the source of that information. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. Defendants further aver that on December 12, 2025, the Court's Order dismissed all statements Plaintiffs' Complaint challenged regarding the Company's China business, and most statements regarding its business in the United States, and thus, no response to such allegations is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

23.    To address these issues and the market's concerns about them, in September 2022, Schultz unveiled a three-year Reinvention Plan designed to fix the in-store inefficiencies that were impacting both Starbucks customers and partners, and grow sales outside of the United States, including in China. Starbucks executives announced that with a renewed focus on the partner and customer experience and global growth, the Reinvention Plan would deliver a significant increase in comparable store sales growth, a Starbucks financial metric that reports the revenue generated by company-operated stores that have been open for at least 13 months.[3] The Reinvention Plan

---

[3] Comparable store sales is also known as "same store sales."

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 15
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

promised a sharp increase in comparable store sales growth to a range of 7% to 9% annually from FY 2023 to FY 2025, both globally and in the United States, up from a more modest range of 4% to 5%. In China, Company executives told investors that Starbucks expected outsized comparable store sales performance in FY 2023 and FY 2024, as the most severe impact of pandemic related lockdowns were over, with growth normalizing in the new range of 4% to 6% in FY 2025, an increase from the prior range of 2% to 4%. Defendants told investors that the first phase of the plan would target Starbucks' largest market, company-operated stores in the United States.

**ANSWER**:  With regard to the first sentence, Defendants aver that the phrases "these issues" and "market's concerns" are vague and ambiguous and deny the allegations on that basis.  Defendants aver that on September 13, 2022, Starbucks announced a "Reinvention Plan," which was a strategic plan designed to drive earnings growth over the forthcoming three fiscal years.  With regard to the second, third, fourth, and fifth sentences, Defendants aver that each sentence purports to summarize statements made by Starbucks and unnamed executives without specifying when or how the statements were made.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis.  With respect to footnote three, Defendants admit that during the Putative Class Period, the Company disclosed a "comparable store sales" operating metric, which is sometimes also referred to as "same store sales."  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

24.     In conjunction with the announcement of the Reinvention Plan, Starbucks also announced a change in leadership, introducing Narasimhan as Starbucks' next CEO following a six-month immersion program. During his immersion, Narasimhan spent time with Schultz and the management team, visited stores, and trained and worked as a barista and engaged with partners and customers alike. Through his immersion, Narasimhan held himself out as gaining in-depth exposure to the brand, Starbucks culture, and the Reinvention Plan. Starbucks pointed to Narasimhan's "'intensive immersion'" as one of many reasons why he would "'lead Starbucks

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 16
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

into its next phase of growth.'" According to Mellody Hobson, the Company's Independent Board Chair, Narasimhan's "'immersion has deepened Laxman's understanding of Starbucks culture and values.'" Schultz also expressed his confidence in Narasimhan, describing his successor as "'the right leader to take Starbucks into its next chapter'" and stating that Narasimhan "'is uniquely positioned to shape this work and lead the company forward with his partner-centered approach and demonstrated track record of building capabilities and driving growth in both mature and emerging markets.'"

**ANSWER**: With regard to the first sentence, Defendants aver that it purports to summarize statements made by Starbucks without specifying when or how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. Defendants aver that Starbucks announced the Reinvention Plan and Narasimhan as incoming CEO on or about September 13, 2022. With regard to the second sentence, Defendants aver that "immersion," "spent time," and "engaged" are vague and ambiguous and deny the allegations on that basis. With regard to the third sentence, Defendants aver that the sentence purports to summarize statements made by Narasimhan without specifying when or how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. With regard to the fourth sentence, Defendants aver that the sentence purports to summarize statements made by Mellody Hobson without specifying when or how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. With regard to the fifth sentence, Defendants aver that the sentence purports to summarize statements made by Howard Schultz without specifying when or how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 17
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**C.**    **In March 2023, Narasimhan Takes over and Introduces His Own Spin on the Reinvention Plan Dubbed the "Triple Shot Reinvention with Two Pumps" Plan**

25.    Following his immersion, Narasimhan took over the CEO position in March 2023. To make his mark, Narasimhan immediately went to work on his own spin on the Reinvention Plan, which was called the Triple Shot Reinvention with Two Pumps (the "Triple Shot" plan). Narasimhan's plan built on Schultz's Reinvention Plan, with added focus on improving in-store efficiencies and partner culture to grow store sales and improve the Starbucks customer experience, while also expanding the Company's global store footprint, particularly in Starbucks' important China market. The stakes were high when Narasimhan took over as CEO: he brought little CEO experience running a global restaurant chain and Schultz's Reinvention Plan called for almost doubling both global and U.S. comparable store sales growth over a three-year period.

**ANSWER**:  With regard to the first sentence, Defendants aver that the phrase "[f]ollowing his immersion" is vague and ambiguous and deny the allegations on that basis.  Defendants admit that Narasimhan assumed the role of CEO on or about March 20, 2023.  With regard to the second sentence, Defendants aver that the phrases "make his mark," "went to work," and "his own spin" are vague and ambiguous and deny the allegations on that basis.  With regard to the third sentence, Defendants aver that the phrases "built on Schultz's Reinvention Plan" and "added focus" are vague and ambiguous and deny the allegations on that basis.  With regard to the fourth sentence, Defendants aver that the phrases "stakes were high" and "brought little CEO experience running a global restaurant chain" are vague and ambiguous and deny the allegations on that basis.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

26.    Narasimhan formally announced his Triple Shot plan to investors on November 2, 2023. The Triple Shot concerned the core idea of Schultz's Reinvention Plan: elevating the Starbucks brand through better-run stores; strengthening and scaling the Company's digital capabilities; and expanding globally, particularly in China. The "Two Pumps" component centered

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 18
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

on growth through operation efficiency and cutting costs. Defendants told investors that they expected savings of $3 billion over the next three years, with $1 billion coming from increased store efficiency. These savings would be both reinvested in the business and delivered to shareholders through margin expansion and earnings growth. Starbucks was also continuing to reinvigorate partner culture. This "pump" centered on investing in all aspects of the partner experience while benefiting from lower attrition and higher tenure in U.S. stores.

**ANSWER**:  With regard to the first sentence, Defendants admit that Starbucks held an investor call on November 2, 2023 regarding a "Reinvention Update," the transcript of which is publicly available and includes comments from Narasimhan on the Triple Shot Reinvention Plan.  With regard to the second sentence, Defendants aver that the phrases "core idea," "better-run stores," and "digital capabilities" are vague and ambiguous and deny the allegations on that basis.  With regard to the third sentence, Defendants aver that the phrases "centered on growth through operation efficiency" and "cutting costs" are vague and ambiguous and deny the allegations on that basis.  With regard to the fourth and fifth sentences, Defendants aver that each sentence purports to summarize statements made during the "Reinvention Update" investor call without specifying who made the statements.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the sixth sentence, Defendants aver that the phrase "continuing to reinvigorate partner culture" is vague and ambiguous and deny the allegations on that basis.  With regard to the seventh sentence, Defendants aver that the phrases "investing in all aspects" and "benefitting from lower attrition" are vague and ambiguous and deny the allegations on that basis.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 19
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**D.** **Starbucks Implements an Algorithm, the SPA Tool, but It Suffers from Severe Deficiencies that Lead to Store Understaffing, Rapidly Increasing Wait Times, and Declining Store Traffic**

27.     Shortly after Narasimhan took over as CEO in March 2023, in conjunction with implementing the Reinvention Plan and Narasimhan's own Triple Shot plan, the Company began working on a new labor algorithm for partner scheduling and staffing. Internally called the SPA tool, the algorithm utilizes a set of data such as historical trends, current trends, and product availability to forecast the number of hours needed for each store throughout the day.

**ANSWER**: With regard to the first sentence, Defendants admit that Narasimhan assumed the role of CEO on or about March 20, 2023.  Defendants aver that on December 12, 2025, the Court's Order did "not find sufficient indicia of reliability to support" Plaintiffs' contentions—based upon a May 29, 2024 Bloomberg article—about a "new staffing algorithm" and dismissed Plaintiffs' claims based on any alleged staffing algorithm discussed in this paragraph, and thus no response to such allegations is required.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

28.     Unbeknown to investors, however, by the start of the Class Period, the new algorithm was causing significant operational issues within company-operated stores in the United States. Specifically, despite knowing that customer demand for more complex and customized drinks was increasing, Defendants failed to adjust the algorithm to incorporate the time needed for increasingly complex and time-consuming drink customizations customers were ordering. As a result, the algorithm was not accurately projecting the number of partner hours needed to staff stores to meet customer demand. The understaffing problems were compounded by a roll out of numerous new menu offerings, which partners had to learn to prepare on the job. Starbucks was also rolling out promotional events, which often spiked orders beyond regular projections but which the algorithm did not factor in when determining how much manpower was needed. The understaffing problem was also exacerbated by the fact that in the year before the Class Period,

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 20
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

Starbucks had laid off a staggering 29,000 in-store workers in the United States (reducing the number of partners from approximately 248,000 to 219,000) while at the same time ambitiously expanding its U.S. footprint by opening 380 stores.

**ANSWER**:  With regard to the first through fifth sentences, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions.  With regard to the sixth sentence, Defendants aver that at the end of fiscal year 2022, Starbucks employed approximately 248,000 people at U.S. Company-operated stores, and had 9,265 total U.S. Company-operated stores, and that at the end of fiscal year 2023, Starbucks employed approximately 219,000 people at U.S. Company-operated stores and had 9,645 total U.S. Company-operated stores.   Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

29.    As a result, during the Class Period, the Company's U.S. stores were consistently understaffed as partners had to increasingly juggle in-person, drive-thru, mobile, and delivery orders, which registered in Starbucks' system at the same time. Before and during the Class Period, internal employee surveys showed that staffing shortages and scheduling were the top complaints for Starbucks employees and were causing employee attrition. Many partners internally reported working short-staffed and getting scheduled for fewer hours than they wanted or needed. Additionally, Starbucks had implemented new policies mandating partners work a minimum of 12 hours per week, which was reducing the number of employees available at certain locations.

**ANSWER**:  Defendants deny the allegations contained in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

30.    Due to the severe, systemic understaffing, during the Class Period, the customer experience Starbucks prided itself on was rapidly degrading, and drink and food order wait times were ballooning, which were negatively impacting store traffic. By November 2023, U.S. store traffic was declining as wait times increased, and by January 2024, 8% of Starbucks customers

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 21
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

were waiting between at least 15 and 30 minutes for a drink, compared to no one waiting that long during the same period in 2019. By the start of the Class Period, customers using the Starbucks mobile app to order ahead were abandoning their orders due to long wait times. And by January 2024, the percentage of abandoned mobile orders was rising to the mid-teens. Starbucks' customer contact center was flooded with calls from dissatisfied customers that orders were taking too long.

**ANSWER**: Defendants deny the allegations contained in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

31. Defendants were well aware of lengthening wait times and the resulting erosion of U.S. traffic. As CFO, Ruggeri led Starbucks' Audit and Compliance Committee, which was tasked with "monitor[ing] and mitigat[ing] current and emerging labor and human capital management risks." Moreover, Starbucks prided itself on "regularly conduct[ing] anonymous surveys to seek feedback from our partners on a variety of topics," the results of which were "reviewed by senior leadership, who analyze areas of progress or deterioration and prioritize actions and activities in response to this feedback to drive meaningful improvements in partner engagement." In addition, Defendants admittedly tracked orders placed by Starbucks Rewards members through the Starbucks app's Mobile Order & Pay ("MOP").[4] By doing so, Defendants could assess the rate at which orders were not completed and the reasons why.

**ANSWER**: Defendants aver that this paragraph purports to quote statements made by the Company without specifying who made the alleged statements or when and how they were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions. With respect to footnote four, Defendants admit that the Starbucks Rewards program is a spend-based loyalty program. Defendants aver that members earn loyalty points (referred to as stars) in a variety of

---

[4] Starbucks Rewards members are customers who are enrolled in the Starbucks Rewards loyalty program, a spend-based program through which customers can earn loyalty points that can be redeemed for free product at company-operated stores.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 22
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

ways, including with each purchase at participating Starbucks stores, and that after accumulating a certain number of stars, customers can earn rewards that can be redeemed, including for free product, and that will be honored at Company-operated stores and certain participating licensed-store locations. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

### E. Defendants Concealed that Starbucks Sales in China Were Being Impacted by Fierce Competition

32. At the same time that the new labor algorithm was backfiring and causing understaffing and long customer wait times at U.S. company-operated stores, Starbucks' China business was facing increased competition from a growing number of specialty coffee chains, local cafés, and premium coffee brands that was causing the Company's sales in China to sharply decline. Starbucks' biggest competitors, Cotti and Luckin, were aggressively lowering prices to gain market share and outpacing Starbucks in store openings, and were focused on a take-out centric model with which Starbucks could not compete. During the Class Period, Defendants knew but failed to disclose that their reinvention plans to grow sales outside of the United States, including China, were being thwarted by competition.

**ANSWER**: Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions. Defendants further aver that on December 12, 2025, the Court's Order did "not find sufficient indicia of reliability to support" Plaintiffs' contentions—based upon a May 29, 2024 Bloomberg article—about a "new staffing algorithm," dismissed Plaintiffs' claims based on any alleged staffing algorithm, and dismissed all statements Plaintiffs challenged regarding the Company's China business, and thus, no response to such allegations is required.

33. Ultimately, the truth about declining store traffic and sales in both the United States and China was revealed on April 30, 2024, when Starbucks was forced to report that U.S., China, and global comparable store sales and traffic had significantly declined. Narasimhan admitted that "challenge[s] meeting our peak morning demand in the U.S." and "long wait times" contributed

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 23
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

to the decline in U.S. store traffic while "intense price competition" contributed to the decline in comparable store sales in China. In the wake of the disappointing announcement, Schultz took to social media, stating that "the company's fix needs to begin at home" because "U.S. operations are the primary reason for the company's fall from grace." According to Schultz, "[t]he answer does not lie in data, but in the stores."

**ANSWER**: With regard to the first sentence, Defendants aver that on April 30, 2024, Starbucks released its financial results for its 2Q24, including that North America and U.S. comparable store sales declined 3%, driven by a 7% decline in comparable transactions, partially offset by a 4% increase in average ticket; and that China comparable store sales declined 11%, driven by an 8% decline in average ticket and a 4% decline in comparable transactions. With regard to the second sentence, Defendants aver that this sentence purports to summarize statements made by Narasimhan without specifying how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. With regard to the third and fourth sentences, Defendants aver that these sentences purport to summarize statements made by Schultz on social media without specifying how or when the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## V.   DEFENDANTS' FALSE AND MISLEADING STATEMENTS

### A.   Q3 2023 and FY 2023 Earnings Report

34.   The Class Period begins on November 2, 2023, when Starbucks reported Q4 2023 and FY 2023 earnings results.[5] In the earnings release, Narasimhan touted the reinvention plan and its purported "positive impact" on "partner and customer experiences":

---

[5] Starbucks' fiscal year ends on the Sunday closest to September 30.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 24
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*"Our Reinvention is moving ahead of schedule, fueling revenue growth, efficiency and margin expansion. Notably, we continue to see the positive impact of our Reinvention on our partner and customer experiences*, proof points that we can continue to create, grow and strengthen our business while creating value for all. As we enter the current year, in the face of macro uncertainty, we remain confident in the momentum throughout our business and headroom globally. We expect sustained momentum throughout the company for years to come."

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. With respect to footnote five, Defendants admit that the Company's fiscal year ends on the Sunday closest to September 30. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

35.    Also on November 2, 2023, Narasimhan and Ruggeri convened a conference call with investors and analysts to discuss Starbucks' Q4 2023 and FY 2023 financial results and to give investors a Reinvention Plan update. During the conference call, Narasimhan reiterated his "confidence in the company's long-term opportunity with guidance for fiscal year 2024" derived from the Company's "great momentum, fueled largely by our reinvention plan":

> [W]e will also share our confidence in the company's long-term opportunity with guidance for fiscal year 2024. What you will take away from this call today is that *we have great momentum, fueled largely by our reinvention plan. We are seeing the work pay off through improved partner and customer experiences*, as well as captured improvements in efficiency and margin. We believe this bodes well for this next year and for years beyond.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

36.    Narasimhan pointed to improved partner experience and stable store environments as proof that the Reinvention Plan was working:

> *We have created a more stable environment in our stores*. Hours per partner increased in the quarter by 5% as we continue finding schedules that fit our partners' and customers' needs. Turnover was down in the fourth quarter by

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 25
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

10%, while Barista tenure increased by 16% for the quarter. Customer connection scores also improved in the quarter relative to this time last year. We did all of this by investing over 20% of this year's profits back into our partners and stores through wages, training, equipment and new store growth. ***All this is further evidence that our strategy is working***.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

37.    During the November 2, 2023 conference call, both Narasimhan and Ruggeri discussed strong demand for Starbucks in the United States. Narasimhan stated: "Here in the U.S., our largest market, we saw momentum sustain throughout the quarter. Revenue for the quarter was up a record 12%, underpinned by 8% comps." Ruggeri underscored this growth, highlighting both transaction comparable sales growth and growth among Starbucks' "occasional" customer:

Our U.S. business delivered 8% comparable store sales growth in Q4.

\* \* \*

***Transaction comparable sales growth in the quarter was 2%***, which, combined with another quarter of a record ticket, drove multiple record average weekly sales, including delivering our sixth highest sales weeks ever, driven by our successful fall launch. Demand continued outside of our promotion windows, which translates to future opportunity as we leverage targeted offers to our most loyal customers, increasing efficiency as we create a more personalized experience.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

38.    During the Q&A portion of the call, an analyst asked Defendants to "help unpack where the growth is coming from" for "U.S. comps and traffic":

[Analyst:] [O]n the U.S. comps and traffic, can you help unpack where the growth is coming from? Is it new customers, existing customers, rewards members or more occasional customers? . . .

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 26
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

[Ruggeri:] Lauren, I'll start by just saying, *overall, our traffic continues to be strong and it's growing*. So when you look at the success of our performance in the quarter, particularly in the U.S., our highest-ever average weekly sales were driven by a combination of strength in traffic but also strength in overall ticket. And we saw a record number of customers coming into our stores and spending a record amount. Now those customers are both our rewards customers as well as our non-Starbucks Rewards customers. So we're seeing growth in our customer base across the segments. And that's driving strong performance as each customer is spending more.

**ANSWER:** Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

39.   Another analyst questioned Defendants about China and the "competitive intensity" Starbucks faced in its most important market outside of the United States, in response to which Narasimhan assured that "our business is strong" and the "business is coming together despite all the headwinds":

[Analyst:] I had a question about China, please, which I think we've heard the competitive environment there is very intense. . . . But just trying to get a read on competitive intensity, and maybe implications for new unit economics and the margin structure for the business going forward[?]

. . . [Narasimhan:] [A]s Rachel said, [in China,] *our business is also strong*, 5% comp in Q4. If you look at the first half of the year versus the second half of the year, the growth difference in the second half was 20% higher than the first. One thing you should know is that if you just look at the morning daypart, the morning daypart for our business in China now is higher than it was pre-COVID.

We have very strong local innovation and to answer your question, if you look at the transactions that Rachel mentioned, we're very comfortable with the food and beverage transactions and what we see there, including the price realization that we have . . . . But *we feel very good about the competitive position of beverages, the competitive position of food. We feel very good about the cash returns of the stores that we are opening. They're very strong*. The team has done a wonderful job in ensuring that the cost of builds are low, with the productivity that we have been able to accomplish in our stores. *We feel good about the overall returns that we are getting there. And I'm heartened by . . . how the business is coming together despite all the headwinds that have been there for the last couple of years*.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 27
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

40.    Defendants' statements, as alleged above in ¶¶34-39, were false and misleading when made. The true facts, which Defendants knew or recklessly disregarded, were that:

(a)    The Reinvention Plan was not fueling "revenue growth" and "working," or "improv[ing] partner and customer experiences" and "creat[ing] a more stable environment in our stores" as Defendants stated in ¶¶34-36 above, but rather the SPA tool was causing store understaffing in nearly one-third of the Company's U.S. stores. As a result, customer wait times were skyrocketing, driving customers away, and significantly degrading store experiences for partners and customers alike. The SPA tool failed to accurately account for the number of partners required to efficiently staff stores because it did not take into account the time needed to fulfill the increasing demand for highly customized drinks, surging mobile orders, the effects of customer promotions on store traffic, and the roll out of numerous new menu offerings (which partners had to learn to prepare on the job). Partners were being overwhelmed as they were forced to increasingly juggle in-person, drive-thru, mobile, and delivery orders, and there were not enough partners behind the counter to prepare drinks. As a result, customer wait times were increasing and causing mobile app orders to be abandoned, which began to negatively impact store traffic beginning in November 2023. Also, Starbucks' customer contact center was being flooded with calls from dissatisfied customers that orders were taking too long, which undermined Starbucks' image as a premium brand and ultimately hurt store traffic and sales;

(b)    Starbucks' "competitive position" in China was not "strong," as stated in ¶39 above, because Starbucks' biggest competitors were aggressively lowering prices to gain market share and outpacing Starbucks in store openings, and were focused on a take-out centric model with which Starbucks could not compete. Defendants knew but failed to disclose that their

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 28
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

reinvention plans to grow sales outside of the United States, including China, were being thwarted by competition; and

(c)   Momentum in the U.S. market was not "sustain[ed] throughout the quarter," and "traffic" was not "strong and . . . growing," as Defendants represented in ¶¶37-38 above. Rather, at the time they spoke, they were aware of the issues described in ¶40(a) above and, as they would later admit during Starbucks' January 30, 2024 conference call, traffic was actually "pressured to negative single digits in November before it started to rebound in December," which was particularly true with respect to occasional customers.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023, and thus, no response is required.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

**B.   Q1 2024 Earnings Report**

41.   On January 30, 2024, Narasimhan and Ruggeri convened a conference call with investors and analysts to discuss Starbucks' Q1 2024 financial results. During his opening remarks, Narasimhan claimed Defendants saw "***exciting momentum in China with our focus on premium and progress on the execution of our Triple Shot strategy***." He further stated that "***[w]e also saw great momentum in China,***" and, "***[o]verall, our business and brand in China remains strong***."

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

42.   Narasimhan claimed that Starbucks' financial performance had been "fundamentally strong" and a testament to the Triple Shot's successful execution:

> ***Our performance in the quarter was fundamentally strong***. Our Q1 total company revenue was a record $9.4 billion, up 8% year-over-year. Our global comparable store sales grew 5% year-over-year, supported by ***a 5% comp***

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 29
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

*growth in North America*, driven by 4% ticket growth *and 10% comp growth in China*. Our global operating margins expanded by 130 basis points to 15.8% and our overall earnings per share grew 20% to $0.90. ***This speaks to the continued successful execution of our reinvention plan and the durable business we are building***.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

43.    Narasimhan touted the strength of Starbucks' most loyal customers. According to Narasimhan, "we saw our most loyal customers around the world coming into our stores more often. Specifically, in the U.S., we set new records with our 90-day active Rewards members growing 13% year-over-year to a record 34.3 million . . . ." Narasimhan summed up: "In short, our ***growing Starbucks Rewards members are visiting our stores more frequently*** and increasing their spend each time that they come."

**ANSWER**: With regard to the first sentence, Defendants deny the allegation, including Plaintiffs' characterization of the events at issue and any legal conclusions. With regard to the second and third sentences, Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in these sentences, and thus, no response is required. With regard to the fourth sentence, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted. Defendants aver that the quoted statement must be read in its entirety, including the full context in which the statement was made and the subject matter about which it pertained—*i.e.*, the Company's 1Q24 historical financial results. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

44.    During the Q&A portion of the call, Narasimhan reiterated that "***our loyalty program is already performing exceptionally well***." He confirmed that "***we are seeing no***

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 30
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

*slowdown in our loyal SR customers.* In fact, we're seeing an increase in frequency. They're buying more, they're customizing more. That part of the business is extremely strong."

**ANSWER**: With regard to the first sentence, Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statement quoted in this sentence, and thus, no response is required. With regard to the second, third, fourth, and fifth sentences, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in those sentences. Defendants aver that the quoted language must be read in its entirety, including the full context in which the statements were made and the subject matter about which they pertained—*i.e.*, the Company's 1Q24 historical financial results. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

45.   With respect to occasional customers, Narasimhan acknowledged a "softening," though he assured investors that such softening was transitory, as initiatives that had been instituted were already having a "*positive impact*" on customer traffic:

> We had great momentum in August and September, and that continued into October, which exceeded our expectations across every measure. ***Beginning in mid-November, while our business continued to grow, the growth rate was impacted by 3 unexpected factors***.
>
> First, we saw a negative impact to our business in the Middle East. Second, events in the Middle East also had an impact in the U.S., driven by misperceptions about our position. Our most loyal customers remain loyal and in fact, increased their frequency and spend in the quarter. ***But we did see a softening of U.S. traffic***. Specifically, our occasional U.S. customers, who tend to visit the afternoon, came in less frequently. I will speak in a moment as to how we quickly responded with an effective action plan. . . .
>
> We responded quickly to these headwinds. In the U.S., we implemented targeted offers aimed at bringing our occasional customers into our loyalty program. As we've seen over time, Starbucks Rewards members develop a routinized long-term relationship with our brand that increases both ticket and transactions. Additionally, we activated new capabilities within our proprietary Deep Brew data analytics and AI tool to identify and incentivize specific rewards members cohorts. Finally, we are leaning further into our brand,

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 31
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

marketing and factual narrative and social media to engage these audiences where they are.

*We've already seen the positive impact of these new initiatives with our more occasional customers beginning to rebound in December.* However, we continue to see further opportunity to welcome back our very occasional customers. We feel good about the trajectory over the course of the quarter, but it will take time for our plans to be fully realized.

**ANSWER**: With regard to the first through fourth and sixth through sixteenth sentences, Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the quoted statements, and thus, no response is required.  With regard to the fifth sentence, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in that sentence ("Our most loyal customers remain loyal, and in fact, increased their frequency and spend in the quarter"). Defendants aver that the quoted language must be read in its entirety, including the full context in which the statement was made and the subject matter about which it pertained—*i.e.*, the Company's 1Q24 historical financial results.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

46.    Ruggeri affirmed this "rebound," stating:

*Our U.S. company-operated business delivered 5% comparable store sales growth in Q1* driven by 4% ticket growing from pricing, mix and customization. . . . Comparable transactions for the quarter increased 1% as traffic was pressured to negative single digits in November *before it started to rebound in December*.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the quoted statements, and thus, no response is required.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 32
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

47.    Narasimhan stated that "*we remain confident in our Triple Shot strategy and our long-term growth*." According to Narasimhan, the first priority of the Triple Shot Reinvention "*is to elevate our brand by operating great stores* and driving product innovation. *The best lever for elevating our brand is our store experience. We continue to raise the bar on running great stores with a focus on enhancing both our partner and customer experience.*"

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization and any legal conclusions.

48.    Narasimhan underscored the importance of the store experience for both the customer and partner, calling the former "the key to our success" and highlighting investments in the latter via the reinvention strategy in order to "unlock efficiency" and create "a more stable environment for our partners":

> As you heard me say often, the key to our success is the experience that our partners create for our customers. *We're investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency. In the quarter, we have seen the effectiveness of the Reinvention driven investments we have made in in-store operational efficiencies such as* standards, equipment innovation and *scheduling improvements, leading to a more stable environment for our partners*.

> Turnover has decreased by 5% year-over-year and is now well below pre-COVID levels. *Average partner hours increased 10% leading to a 14 percentage point increase in partner sentiment related to scheduling*, specifically preferred hours, which we know is important to partners. *We are listening to our partners and investing to make their experience better*.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrase "the importance of the store experience" is vague and ambiguous and deny the allegations on that basis.  With regard to the second sentence, Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this sentence, and thus, no response is required. With regard to the third and fourth sentences, Defendants admit that Starbucks held its 1Q24

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 33
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in those sentences ("We're investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency.  In the quarter, we have seen the effectiveness of the Reinvention driven investments we have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners.").  Defendants aver that the quoted language must be read in its entirety, including the full context in which the statement was made and the subject matter about which it pertained—*i.e.,* the Company's 1Q24 historical financial results.  With regard to the fifth through seventh sentences, Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in these sentences, and thus, no response is required.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

49.    Ruggeri supported this point, falsely asserting that Starbucks "improv[ed] our overall scheduling" such that the Company was able "to create a better efficiency in serving our customers":

> [M]ore recently, we focused on improving our overall scheduling. So providing more hours for our partners per store. We have a ways to go, but we know that that's a high driver of engagement. All of those efforts together have led to lower turnover in a more stable environment. And *it's that stability that really allows us to create a better efficiency in serving our customers. So as an example, I already spoke about our morning daypart this quarter in the U.S. was the strongest that we've seen. And that's a function of all of those efforts and activities that I just spoke about being realized in supporting our demand*. So creating a better experience for our partners leads to the better experience for our customers.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 34
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

50.     Ruggeri also attributed the "substantial margin expansion in the quarter" to "*the meaningful labor staffing and scheduling improvements we made as part of our reinvention*." According to Ruggeri: "*We unlocked significant stability by focusing on staffing and scheduling hours based on partners' preferred shifts, which enhanced both our partners' experience and subsequent store performance*."

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

51.     On January 30, 2024, Starbucks filed with the SEC a quarterly report on Form 10-Q (the "Q1 2024 Form 10-Q"). The Q1 2024 Form 10-Q was signed by Ruggeri and the attached SOX certifications signed by Narasimhan and Ruggeri. The Q1 2024 Form 10-Q stated: "*There have been no material changes to the risk factors disclosed in our 10-K*." The risk factors contained in Starbucks' Form 10-K for the fiscal year ended October 1, 2023, filed with the SEC on November 17, 2023 (the "FY 2023 Form 10-K"), stated:

> Erosion of trust in our brand value can be caused by isolated or recurring incidents originating both from us or our business partners, or from external events. Such incidents can potentially trigger boycotts of our stores or result in civil or criminal liability and can have a negative impact on our financial results. . . . *[I]f we are not effective in* making sufficient progress toward our social and environmental program goals or in *executing on our Reinvention Plan, consumer trust in our brand may suffer, and this perception could result in negative publicity or litigation*. . . .
>
> The ongoing relevance of our brand may depend on making sufficient progress toward our social and environmental program goals as well as the successful execution of the Reinvention Plan, each of which requires companywide coordination and alignment.

**ANSWER**: Defendants aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this paragraph, and thus, no response is required.  Except as

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 35
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

52. Defendants' statements, as alleged above in ¶¶41-51, were false and misleading when made. The true facts, which Defendants knew or recklessly disregarded, were that:

(a) Defendants were not "successful[ly] execut[ing] [on] our Reinvention Plan" or "investing in a better experience for our partners," as they stated in ¶¶41-42, 47-48, and 50-51 above, but rather, the SPA tool was causing store understaffing in nearly one-third of the Company's U.S. stores. As a result, customer wait times were skyrocketing, driving customers away and significantly degrading store experiences for partners and customers alike. The SPA tool failed to accurately account for the number of partners required to efficiently staff stores because it did not take into account the time needed to fulfill the increasing demand for highly customized drinks, surging mobile orders, the effects of customer promotions on store traffic, and the roll out of numerous new menu offerings (which Partners had to learn to prepare on the job). Partners were being overwhelmed as they were forced to increasingly juggle in-person, drive-thru, mobile, and delivery orders, and there were not enough partners behind the counter to prepare drinks;

(b) As a result of ¶52(a) above, Starbucks was not "creat[ing] a better efficiency in serving our customers" as Defendants represented in ¶¶47-50 above. Instead, by the beginning of January 2024, 8% of Starbucks customers were waiting between at least 15 and 30 minutes for a drink, compared to no one waiting that long during the same period in 2019. By the start of the Class Period, customers using the Starbucks mobile app to order ahead were abandoning their orders due to long wait times, and by January 2024, the percentage of abandoned mobile orders rose to the mid-teens. Also, Starbucks' customer contact center was being flooded with calls from dissatisfied customers that orders were taking too long, which undermined Starbucks' image as a premium brand and ultimately hurt store sales;

(c) As a result of the facts stated in ¶52(a)-(b) above, Defendants' statement that "[t]here have been no material changes to the risk factors disclosed in our 10-K" in ¶51 above was

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

misleading because it omitted that the material risks previously warned of – "if we are not effective in . . . executing on our Reinvention Plan, consumer trust in our brand may suffer" – had already come to fruition and materially changed since November 17, 2023;

(d)    Contrary to Defendants' statements in ¶¶42 and 46 above, at the time Defendants spoke on January 30, 2024, Starbucks' U.S. business was experiencing sharply declining comparable store sales driven by significant decrease in store traffic, due to long wait times;

(e)    It was misleading to state that Starbucks Rewards members were "visiting our stores more frequently" and the Company was "seeing no slowdown in our loyal SR customers," as stated in ¶¶43-44 above, when Defendants were aware that customers were increasing their frequency of use but not completing orders. In particular, Defendants tracked the percentage of customers using Mobile Order Pay and were aware that 50% of MOP orders during the daypart were not being completed. Moreover, Defendants acknowledged just three months later that Starbucks Rewards members had in fact declined during Q2 2024, with analysts reporting that "[e]ven active domestic Starbucks Rewards members took a rare dip, declining 4$ on a sequential basis" which was "partly chalked up to weather disruption";

(f)    Customers did not "begin[] to rebound in December" as Defendants misrepresented in ¶¶45-46 above. Instead, as Ruggeri would later admit on June 5, 2024, occasional customers' visits to Starbucks did not rebound in December, but rather persisted into Q2 2024 and "even further"; and

(g)    Contrary to Defendants' statements in ¶¶41-42 above, there was no "exciting momentum in China." In truth, Defendants knew but failed to disclose that Starbucks' business in China was being negatively impacted by the aggressive expansion efforts and price cutting of its competitors. As Defendants would be forced to admit just one quarter later, at the time Defendants spoke at the end of January and in the midst of Q2 2024, the Company's performance in China was on the decline, suffering from a 3% decline in revenue and an 11% decrease in comparable store sales.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 37
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**ANSWER**: Defendants deny the allegations contained in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## VI. ADDITIONAL SCIENTER ALLEGATIONS

53. Each defendant knew or acted with deliberate recklessness that material facts were being concealed from investors during the Class Period and the statements set forth in ¶¶34-39 and 41-51 above would be misleading to investors when made. Defendants' misconduct was knowing or deliberately reckless based on the factual allegations above and the following:

**ANSWER**: Defendants deny the allegations contained in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

### A. The Alleged Misrepresentations and Omissions Concerned Starbucks' Core Operations

54. The misrepresentations and omissions alleged herein involve the core of the Company's business: comparable store sales in the Company's two largest markets, the United States and China, partner staffing and scheduling, and customer demand. Narasimhan and Ruggeri were the two top executives – CEO and CFO – at Starbucks and led its day-to-day operations. As reported in the Company's FY 2023 Form 10-K, comparable store sales were one of the key operating metrics Defendants used to assess growth of the Company's business and the effectiveness of its operations. Defendants reported on this key metric and its major component, comparable store transactions (store traffic), during each Class Period conference call with investors.

**ANSWER**: With regard to the first sentence, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and legal conclusions. With regard to the second sentence, Defendants aver that the phrases "two top executives," and "led its day-to-day operations" are vague and ambiguous and deny the allegations on that basis. Defendants admit that during the Putative Class Period, Narasimhan served as the Company's CEO and that Ruggeri served as CFO. With regard to the third sentence, Defendants aver that the Company's FY23 Form 10-K referred

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 38
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

to comparable store sales as one of several "key operating metrics" to "assess the growth of [its] business and the effectiveness of [its] marketing and operational strategies."  With regard to the fourth sentence, Defendants aver that Starbucks reported on comparable store sales, including comparable store transactions, on the 1Q24 earnings call.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

55.   Narasimhan and Ruggeri also oversaw and monitored the progress of the Reinvention Plan and Narasimhan's Triple Shot plan, which targeted store sales growth in the United States and China through improved in-store operations and cost control. Narasimhan and Ruggeri's monitoring and overseeing of these plans included knowing the effectiveness of the partner staffing and scheduling algorithm (the SPA tool), which was implemented as part of the plans, and customer demand.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "oversaw and monitored" and "progress" are vague and ambiguous and deny the allegations on that basis.  With regard to the second sentence, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions.  Defendants further aver that on December 12, 2025, the Court's Order did "not find sufficient indicia of reliability to support" Plaintiffs' contentions—based upon a May 29, 2024 Bloomberg article—about a "new staffing algorithm" and dismissed Plaintiffs' claims based on any alleged staffing algorithm discussed in this paragraph, and thus no response is required to such allegations.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

56.   During the Class Period, Narasimhan repeatedly touted his knowledge of the progress the Reinvention Plan and his Triple Shot with Two Pumps plan and their impact on the partner and customer experience:

- "Our Reinvention is moving ahead of schedule, fueling revenue growth, efficiency and margin expansion. Notably, we continue to see the positive impact of our

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 39
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Reinvention on our partner and customer experiences." (November 2, 2023 conference call for Q4 2023);

- "What you will take away from this call today is that we have great momentum, fueled largely by our reinvention plan. We are seeing the work pay off through improved partner and customer experiences." (November 2, 2023 conference call for Q4 2023);

- "We have created a more stable environment in our stores. . . . All this is further evidence that our strategy is working." (November 2, 2023 conference call for Q4 2023);

- "In the quarter, we have seen the effectiveness of the Reinvention driven investments we have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners." (January 30, 2024 conference call for Q1 2024).

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "repeatedly touted," "progress" and "partner and customer experience" are vague and ambiguous and deny the allegations on that basis. With regard to the first, second and third bullets, Defendants admit that Starbucks held its 4Q23 earnings call on November 2, 2023, the transcript of which is publicly available and contains the language quoted in these bullets. Defendants further aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to statements made on November 2, 2023. With regard to the fourth bullet, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in this bullet. Defendants aver that the quoted language must be read in its entirety, including the full context in which the statement was made and the subject matter about which it pertained—*i.e.*, the Company's 1Q24 historical financial results. Except as expressly admitted, Defendants deny the remaining allegations contained in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

57.   Defendants also highlighted the risk Starbucks would face if they did not effectively execute the Reinvention Plan. In the Company's FY 2023 Form 10-K, Defendants stated: "[I]f we are not effective . . . in executing on our Reinvention Plan, consumer trust in our brand may suffer, and this perception could result in negative publicity or litigation."

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 40
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**ANSWER**: With regard to the first sentence, Defendants aver that this sentence purports to summarize statements made by Defendants without specifying who made the alleged statements or when and how they were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. With regard to the second sentence, Defendants admit that on November 17, 2023, Starbucks filed with the SEC an annual report on Form 10-K, which is publicly available and contains the language quoted in the second sentence. Defendants further aver that on December 12, 2025, the Court's Order dismissed Plaintiffs' challenge to the statements quoted in this sentence, and thus, no response is required. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

58. Narasimhan also acknowledged that the Company "extremely carefully" tracked customer demand during the Class Period. During the November 2, 2023 conference call for Q4 2023, Narasimhan acknowledged that Defendants watched customer demand "extremely carefully," with Defendants digitally tracking "over 75 million customers in terms of their last 90-day activity." During the April 30, 2024 conference call for Q2 2024, Narasimhan also confirmed that, during the Class Period, Defendants tracked the order incompletion rate on the Starbucks mobile order and pay app, and the reasons why customers were not completing their orders.

**ANSWER**: With regard to the first sentence, Defendants aver that this sentence purports to summarize statements made by Narasimhan without specifying when or how the statements were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. With regard to the second sentence, Defendants admit that Starbucks held its 4Q23 earnings call on November 2, 2023, the transcript of which is publicly available and contains the language quoted in the second sentence. With regard to the third sentence, Defendants aver that this sentence purports to summarize statements made during an earnings call without identifying the specific statements made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 41
CASE NO. 2:24-cv-01362-JHC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**B.    Defendants' Knowledge Through Access to Information**

59.    Because partner staffing and scheduling were critical to store operations and, in turn, sales, the Company internally tracked partner feedback and used analytical tools to monitor and track performance and progress of the Company's staffing and scheduling algorithm. The Company's U.S. Leadership Team kept Narasimhan and Ruggeri informed during the Class Period about key data points from the algorithm, including decision-making points regarding labor and store scheduling issues. Defendants also regularly received feedback on staffing and scheduling issues from the Company's Scheduling Excellence Advisory committee that was made up of U.S. store managers, who provided input on partner staffing and scheduling.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "critical to store operations," "internally tracked," "analytical tools," "monitor and track" and "progress" are vague and ambiguous and deny the allegations on that basis.  With regard to the second sentence, Defendants aver that the phrases "key data points" and "decision-making points" are vague and ambiguous and deny the allegations on that basis.  With regard to the third sentence, Defendants aver that the phrases "regularly" and "staffing and scheduling issues" are vague and ambiguous and deny the allegations on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

60.    Narasimhan also publicly, and repeatedly, acknowledged that Defendants closely monitored and tracked partner staffing and scheduling:

- "If you look at staffing and scheduling and how we are working on that, I think we've made material progress in that area." (November 2, 2023 conference call for Q4 2023 earnings);

- "Operationally, we are seeing evidence that we are executing better. . . Through scheduling and staffing improvements, we are beginning to increase the number of hours per partner in store, critical to running great stores and improving partner

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 42
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

engagement while also improving productivity." (August 1, 2023 conference call for Q3 2023 earnings);

- "There's a lot more stability, operational stability, in stores. You see tenure year go up. It's almost up by a year, which is a lot for us. And so staffing and scheduling has been a big area of work." (December 5, 2023 Morgan Stanley Global Consumer & Retail conference);

- "[W]e are listening to our partners and investing to make their experience better." (January 30, 2024 conference call for Q1 2024).

**ANSWER:** With regard to the first sentence, Defendants aver that the phrases "closely monitored," and "tracked," and "partner staffing and scheduling" are vague and ambiguous and deny the allegations on that basis. With regard to the first bullet, Defendants admit that Starbucks held its 4Q23 earnings call on November 2, 2023, the transcript of which is publicly available and contains the language quoted in the first bullet. With regard to the second bullet, Defendants admit that Starbucks held its 3Q23 earnings call on August 1, 2023, the transcript of which is publicly available and contains the language quoted in the second bullet. With regard to the third bullet, Defendants admit that Starbucks participated in the Morgan Stanley Global Consumer & Retail conference on December 5, 2023, the transcript of which is publicly available and contains the language quoted in the third bullet. With regard to the fourth bullet, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in the fourth bullet. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

61. Additionally, after he was hired in September 2022 and before his appointment as CEO, Narasimhan participated in a six-month immersion program where he trained as a barista and worked side-by-side with partners in company-operated stores. Then, after becoming CEO, to keep himself "'close to [Starbucks'] culture and our customers, as well as to our challenges and opportunities,'" Narasimhan committed to work a half day shift each month in a Starbucks café.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 43
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "participated" and "immersion program" are vague and ambiguous and deny the allegations on that basis. With regard to the second sentence, Defendants aver that this sentence purports to summarize statements made by Narasimhan without specifying when, where, and how they were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

62.    Narasimhan also held himself out as having a unique perspective on China markets. During the November 2, 2023 Reinvention Update, Narasimhan told analysts, "I have studied advised-led businesses with a China footprint for the last 20 years. And it's a remarkable country. And I have deep exposure to that country over the years that I've been a professional." He further underscored his knowledge of Starbucks' operations in China during the January 30, 2024 Q1 2024 conference call, telling investors that "I've been to China 3 times in the last 9 months. And one of the things that's fundamentally impressed me with the business is really how we've used COVID and the time that the business has actually taken to reset the business."

**ANSWER**: With regard to the first sentence, Defendants aver that the phrase "unique perspective" is vague and ambiguous and deny the allegations on that basis. With regard to the second sentence, Defendants admit that Starbucks held a Reinvention Update investor call on November 2, 2023, the transcript of which is publicly available and contains the language quoted in the second sentence. With regard to the third and fourth sentences, Defendants admit that Starbucks held its 1Q24 earnings call on January 30, 2024, the transcript of which is publicly available and contains the language quoted in those sentences. Defendants further aver that on December 12, 2025, the Court's Order dismissed all statements Plaintiffs challenged regarding the Company's China business, and thus, no response to such allegations is required. Except as expressly admitted, Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

**C.      Narasimhan's Abrupt Termination Supports Scienter**

63.      Narasimhan's abrupt termination on August 13, 2024 further supports a strong inference of scienter. The termination occurred within four months of the Company reporting its weakest U.S. store traffic performance outside of the COVID pandemic and the 2007 global financial crisis and a major performance decline in the Company's China market. Narasimhan served less than 17 months after assuming the CEO position – representing the shortest CEO tenure in Starbucks' history. Narasimhan's short tenure stands in stark contrast to his predecessor's long, multi-decade tenure as CEO. In announcing Narasimhan's termination, Starbucks stated, without explanation, that he would step down as CEO and member of the Board with "immediate effect."

**ANSWER**: With regard to the first sentence, Defendants admit Narasimhan stepped down as CEO and as a Starbucks director on or around August 13, 2024.  With regard to the third sentence, Defendants aver that Narasimhan joined Starbucks as incoming CEO on or about October 1, 2022, assumed the role of CEO on or about March 20, 2023, and stepped down as CEO on or about August 13, 2024.  With regard to the fourth sentence, Defendants aver that this sentence purports to quote a statement made by Starbucks without specifying who made the alleged statement or when or how it was made.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**D.      Corporate Scienter**

64.      The allegations above also establish a strong inference that Starbucks as an entity acted with corporate scienter throughout the Class Period, as the Individual Defendants, Starbucks' officers, management, and agents, had actual knowledge of the misrepresentations and omissions of material facts set forth herein (for which they had a duty to disclose), or acted with reckless disregard for the truth because they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and/or omissions were made

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 45
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

knowingly or recklessly, and without a reasonable basis, for the purpose and effect of concealing the fraudulent scheme from the investing public. By concealing these material facts from investors, Starbucks maintained and/or increased its artificially inflated common stock prices throughout the Class Period.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## VII.    LOSS CAUSATION

65.    The market for Starbucks common stock was open, well-developed, and efficient during the Class Period. Throughout the Class Period, Starbucks common stock traded at artificially inflated prices as a direct result of Defendants' materially misleading statements and omissions as alleged above in ¶¶34-39 and 41-51, which were widely disseminated to the securities market, investment analysts, and the investing public. Lead Plaintiffs and other Class members purchased or otherwise acquired Starbucks common stock relying upon the integrity of the market price of Starbucks common stock and market information relating to Starbucks.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "open," "well developed" and "efficient" are vague and ambiguous and deny the allegation on that basis. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

66.    When the relevant truth and its impact on Starbucks' financial results and prospects entered the market, the price of Starbucks common stock significantly dropped as the artificial inflation came out of the stock price. As a result of their purchases of Starbucks common stock during the Class Period, Lead Plaintiffs and other Class members suffered economic loss (i.e., damages) under the federal securities laws.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 46
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

67.    On April 30, 2024, after the market closed, the relevant truth concealed by Defendants' materially misleading statements and omissions was revealed when Starbucks issued a press release reporting its Q2 2024 financial results and hosted an earnings conference call for investors. The Company press release reported that global comparable store sales *declined* 4%, driven by a 6% decline in store traffic. The Company press release also reported that North America and U.S. comparable store sales *declined* 3%, driven by a 7% decline in store traffic, and China comparable store sales *declined* 11%, driven by a 4% decline in store traffic. This was the first time since 2020 that the Company reported a decline in comparable store sales. The Company also reported a 2% decline in net revenues over the prior year, and a 14% decline in GAAP earnings per share for Q2 2024, due to a decline in comparable store sales and store traffic.

**ANSWER**: With regard to the first sentence, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions. With regard to the second sentence, Defendants admit that on April 30, 2024, Starbucks issued a press release containing its financial results for 2Q24, including that global comparable store sales declined 4%, driven by a 6% decline in comparable transactions, partially offset by a 2% increase in average ticket. With regard to the third sentence, Defendants admit that on April 30, 2024, Starbucks issued a press release containing its financial results for its 2Q24, including that North America and U.S. comparable store sales declined 3%, driven by a 7% decline in comparable transactions, partially offset by a 4% increase in average ticket; and that China comparable store sales declined 11%, driven by an 8% decline in average ticket and a 4% decline in comparable transactions. With regard to the fourth sentence, Defendants aver that the phrases "decline" and "comparable store sales" (without specifying which regions) are vague and ambiguous and deny the allegations on that basis. With regard to the fifth sentence, Defendants admit that on April 30, 2024, Starbucks issued a press release containing its financial results for its 2Q24, including that consolidated net revenues declined 2% year-over-year and that GAAP earnings per share declined 14% year over

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 47
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

year. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

68.    On the conference call, Narasimhan told investors that "challenge[s] meeting our peak morning demand in the U.S." and "long wait times" contributed to the decline in U.S. store traffic while "intense price competition" contributed to the decline in comparable store sales in China. During the conference call, Ruggeri also informed investors that the Company was slashing its full-year 2024 guidance due to Q2 2024's disappointing comparable store sales performance. The revised FY 2024 outlook projected weaker revenue growth, with global and U.S. comparable store sales now expected to range from a low-single-digit decline to flat, a sharp downgrade from the earlier forecast of 4% to 6% growth. Similarly, expectations for comparable store sales in China were reduced to a single-digit decline, a significant setback from the previously anticipated low-single-digit growth.

**ANSWER**: With regard to the first sentence, Defendants admit that Starbucks held its 2Q24 earnings call on April 30, 2024, the transcript of which is publicly available, and contains the quoted language in this sentence.  With regard to the second sentence, Defendants aver that this sentence purports to summarize statements made during an earnings call without identifying any specific statements.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the third sentence, Defendants aver that the phrase "sharp downgrade" is vague and ambiguous and deny the allegations on that basis.  With regard to the fourth sentence, Defendants aver that the phrase "significant setback" is vague and ambiguous and deny the allegations on that basis.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

69.    In response to this news, the price of Starbucks common stock declined over 15%, from a closing price of $88.49 per share on April 30, 2024 to a closing price of $74.44 per share on May 1, 2024, on abnormally high volume of close to 67 million shares traded, over 7 times the

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

Class Period average trading volume. In stark contrast, on the same date the S&P 500 Consumer Discretionary Sector, a peer group that includes Starbucks, remained flat at -0.0175%.

**ANSWER**: Defendants aver that the price and average trading volume of Starbucks stock is publicly available.  Except as expressly admitted, Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

70.    The drop in the price of Starbucks common stock following the April 30, 2024 disclosure was the biggest single-day price decline since the stock was first publicly listed in 1992. This stock price decline was due to firm-specific, fraud-related disclosures and not the result of market, industry, or firm-specific, non-fraud factors.

**ANSWER**: Defendants aver that the price of Starbucks stock is publicly available.  Except as expressly admitted, Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

71.    Following the April 30, 2024 disclosure, analysts expressed surprise as to the magnitude of the comparable store sales decline and made material downward revisions to their 2024, 2025, and 2026 estimates and stock price targets for Starbucks. For example, in a May 1, 2024 report, Piper Sandler made downward revisions to its 2024 to 2026 estimates and lowered its price target from $100 per share to $88 per share following Defendants' report of declining comparable store sales, and stated "the magnitude of the misses that was quite surprising," and "we think management credibility remains a big issue from here." Similarly, on May 1, 2024, Morningstar issued a report stating "the degree of comparable store sales pressure that [Starbucks] saw in its most recent quarter was shocking."

**ANSWER**: With regard to the first sentence, Defendants aver that Plaintiffs purport to summarize statements made by unknown analysts without stating when or how they were made.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the second sentence, Defendants admit that Piper Sandler issued a report on May 1, 2024, which is publicly available and contains the language quoted in

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 49
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

this sentence. With regard to the third sentence, Defendants admit that Morningstar issued a report on May 1, 2024, which is publicly available and contains the language quoted in this sentence. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

72.    Several analysts also noted that Q2 2024's results were the Company's worst financial performance in recent history. For example, in an April 30, 2024 analyst report, William Blair downgraded Starbucks' stock rating to market perform, noting that Q2 2024 marked the Company's "weakest traffic performance . . . outside of the [COVID] pandemic or the Great Recession." Similarly, in a May 1, 2024 analyst report, Morgan Stanley lowered its revenue estimates and Company price target, stating, "this appears to be the worst quarter in our model . . . outside of the [Global Financial Crisis] and Covid, and -7% [North America] traffic was worse than during the [Global Financial Crisis]." Also on April 30, 2024, Jefferies issued a report stating that Q2 2024 was "the worst result for the [North America] segment in the past 20 years [excluding] the pandemic periods."

**ANSWER**: With regard to the first sentence, Defendants aver that Plaintiffs purport to summarize statements made by unknown analysts without stating when or how they were made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. With regard to the second sentence, Defendants admit that William Blair issued a report on April 30, 2024, which is publicly available and contains the language quoted in this sentence. With regard to the third sentence, Defendants admit that Morgan Stanley issued a report on May 1, 2024, which is publicly available and contains the language quoted in this sentence. With regard to the fourth sentence, Defendants admit that Jefferies issued a report on April 30, 2024, which is publicly available and contains the language quoted in this sentence. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

73.     On May 1, 2024, Narasimhan went on CNBC and spoke to Jim Cramer about the Company's surprisingly poor Q2 2024 financial results. Cramer quickly pointed out that Narasimhan failed to adequately explain the results and noted that shareholders were "distressed" and viewed the problem as "one of trust" with Company management.

**ANSWER:** With regard to the first sentence, Defendants admit that on May 1, 2024 Narasimhan appeared on CNBC and spoke to Jim Cramer about the Company's 2Q24 financial results. With regard to the second sentence, Defendants lack information sufficient to form a belief as to the truth of the allegations in this sentence and on that basis deny the allegations. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## VIII.   POST-CLASS PERIOD DEVELOPMENTS

74.     On May 5, 2024, Starbucks' former CEO Howard Schultz took the unusual step of publicly criticizing Narasimhan's performance as the CEO in a LinkedIn post. Schultz noted that Starbucks' U.S. operations were the primary reason for the Company's stock price decline and criticized the Company's top executives for failing to focus on the customer experience and store operations.

**ANSWER**: With regard to the first sentence, Defendants aver that the phrases "unusual step" and "criticizing" are vague and ambiguous and deny the allegations on that basis. Defendants admit that on May 5, 2024, Howard Schultz made a LinkedIn post, which is publicly available, and deny that the post references Narasimhan. With regard to the second sentence, Defendants aver that Plaintiffs purport to summarize statements made by Schultz without identifying the specific statements made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

75.     On May 29, 2024, Bloomberg published a report based on the accounts of current Starbucks employees confirming that Starbucks' implementation of a new scheduling algorithm was causing stores to be understaffed, which significantly increased food and drink wait times. According to the Starbucks employees, the new algorithm did not "adequately account for the time it t[ook] to fulfill a ballooning number of special customer requests like extra espresso shots or cold foam, as well as the effect of more corporate promotions." The Bloomberg report cited employees confirming that because of the understaffing, workers were "struggling to simultaneously juggle in-person, drive-thru, mobile and delivery orders and customers were waiting longer."

**ANSWER:** With regard to the first sentence, Defendants aver that Plaintiffs purport to summarize statements made in a Bloomberg article without identifying the specific statements made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the second sentence, Defendants admit that on May 29, 2024, Bloomberg published an article entitled "Starbucks Wait Times Jump After Changing Work Algorithm, Staffers Say," and that the article contains the language quoted in this sentence.  With regard to the third sentence, Defendants admit that on May 29, 2024, Bloomberg published an article entitled "Starbucks Wait Times Jump After Changing Work Algorithm, Staffers Say," but deny that the article contains the quoted language.  Defendants further aver that on December 12, 2025, the Court's Order did "not find sufficient indicia of reliability to support" Plaintiffs' contentions—based upon this May 29, 2024 Bloomberg article—about a "new staffing algorithm" and dismissed Plaintiffs' claims based on any alleged staffing algorithm discussed in this paragraph.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

76.     On July 30, 2024, Defendants reported Q3 2024 financial results and more bad news regarding declining comparable store sales and store traffic. Defendants reported that U.S. comparable store sales fell 2%, driven by a 6% decline in store traffic, China comparable store

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

sales fell 14%, driven by a 7% decline in store traffic and profits dropped more than 7%. Narasimhan told investors that the Company was working to speed up service on digital orders, and that Starbucks was exploring strategic partnerships for its China business. Q2 and Q3 2024 were some of the Company's "worst quarters outside of the pandemic or Great Recession."

**ANSWER**: With regard to the first and second sentences, Defendants admit that on July 30, 2024, Starbucks released its financial results for 3Q24, including that U.S. comparable store sales declined 2%, driven by a 6% decline in comparable transactions, partially offset by a 4% increase in average ticket, and that China comparable store sales declined 14%, driven by a 7% decline in both average ticket and comparable transactions. With regard to the third sentence, Defendants aver that this sentence purports to summarize statements made by Narasimhan without identifying any specific statements. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis. With regard to the fourth sentence, Defendants aver that the paragraph purports to quote a statement without specifying who made the alleged statements or when or how it was made. Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny them on that basis. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

77. On August 13, 2024, amidst activist investor pressure, Starbucks abruptly announced that Narasimhan was immediately stepping down as the Company's CEO and a member of its Board. Narasimhan served only 17 months as Starbucks CEO, the shortest CEO tenure in Company history. Brian Niccol, the former CEO of Chipotle, took over as CEO in September 2024.

**ANSWER**: With regard to the first sentence, Defendants admit Narasimhan stepped down as CEO and as a Starbucks director on or around August 13, 2024. With regard to the second sentence, Defendants aver that Narasimhan joined Starbucks as incoming CEO on or about October 1, 2022, assumed the role of CEO on or about March 20, 2023, and stepped down as CEO and director on

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 53
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

or around August 13, 2024.  With regard to the third sentence, Defendants admit that Brian Niccol became CEO in or around September 2024. Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

78.    On January 28, 2025, Starbucks held an earnings conference call with investors. During the call, Niccol admitted that in Q1 2025 (September 30, 2024 to December 29, 2024), the Company added more partner hours to over 3,000 U.S. stores to reduce wait times and ensure enough store staffing to meet demand. During the Q&A portion of the call, an analyst from Deutsche Bank followed up on a question about the additional partner hours Starbucks added. In response, Niccol stated:

> [W]e put in the labor into those 3,000 stores from a precision standpoint, which was really just going back and looking at the labor tables to find out where potentially we've just gotten too thin in certain areas. And so, we've implemented that. The good news is we've seen a positive response on that front.

**ANSWER:** With regard to the first sentence, Defendants admit that Starbucks held its 1Q25 earnings call on January 28, 2025.  With regard to the second sentence, Defendants aver that this sentence purports to summarize statements made by Niccol without identifying his specific statement.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the third sentence, Defendants aver that this sentence purports to summarize statements made by an analyst from Deutsche Bank without identifying any specific statements.  Defendants thus lack information sufficient to form a belief as to the truth of the allegations and deny the allegations on that basis.  With regard to the fourth sentence, Defendants admit that Starbucks held its 1Q25 earnings call on January 28, 2025, the transcript of which is publicly available and contains the language quoted in the fourth sentence.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

## IX.    APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND THE FRAUD-ON-THE-MARKET

79.    Lead Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Starbucks' common stock traded in an efficient market, was liquid and traded with moderate to heavy volume during the Class Period;

- the Company's common stock was traded on the Nasdaq and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

- Lead Plaintiffs and members of the Class purchased, acquired, and/or sold Starbucks common stock between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

**ANSWER**: With regard to the first sentence, Defendants lack information sufficient to form a belief as to the truth of the allegations as to what Lead Plaintiffs purport they will rely upon and deny the allegations on that basis.  With regard to the first and second bullets, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions.  With regard to the third bullet, Defendants aver that the phrases "efficient market" and "was liquid and traded with moderate to heavy volume" are vague and ambiguous and deny the allegations on that basis.  With regard to the fourth bullet, Defendants aver that the phrase "covered by multiple analysts" is vague and ambiguous and deny the allegation on that basis.  Defendants admit Starbucks common stock trades on the Nasdaq Global Select Market. With regard to the fifth and sixth bullets, Defendants deny the allegations, including Plaintiffs' characterization of the events at issue and any legal conclusions.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 55
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

80.     Based upon the foregoing, Lead Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**ANSWER:** Defendants lack information sufficient to form a belief as to the truth of the allegations and deny the allegations in this paragraph on that basis.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

81.     Alternatively, Lead Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

## X.     CLASS ACTION ALLEGATIONS

82.     Lead Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Starbucks common stock during the Class Period and were damaged thereby. Excluded from the Class are Defendants, officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

**ANSWER**: Defendants admit that Plaintiffs purport to bring a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons or entities who purchased or otherwise acquired Starbucks common stock during the Putative Class Period and were damaged thereby.  Defendants further admit that the proposed class excludes Defendants, officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  Except as expressly admitted, Defendants deny the remaining allegations in

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 56
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

83.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Starbucks common stock was actively traded on the Nasdaq. While the exact number of Class members is unknown to Lead Plaintiffs at this time and can be ascertained only through appropriate discovery, Lead Plaintiffs believe there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Starbucks or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions

**ANSWER**: Defendants lack information sufficient to form a belief as to the truth of the allegations in this paragraph and deny the allegations on that basis.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

84.    Lead Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**ANSWER**: Defendants lack information sufficient to form a belief as to the truth of the allegations related to purported claims by members of the proposed class and deny those allegations on that basis.  Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

85.    Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Lead Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

**ANSWER**: Defendants lack information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' ability to fairly and adequately protect the interests of the class, Plaintiffs'

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 57
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

retention of counsel, and Plaintiffs' lack of a conflict of interest with the class and deny the allegations in this paragraph on that basis. Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

86. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, prospects, and/or management of Starbucks;

- whether statements made by Defendants to the investing public during the Class Period omitted material facts necessary to make the statements made neither false nor misleading;

- whether Defendants acted knowingly or with reckless disregard for the truth;

- whether the price of Starbucks common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

87. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 58
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

## XI.    CAUSES OF ACTION

### COUNT I
### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

88.    Lead Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

**ANSWER:** Defendants repeat and reallege their responses in the foregoing paragraphs as though fully set forth herein.

89.    This Count is based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5 promulgated thereunder. During the Class Period, Defendants violated §10(b) of the Exchange Act and SEC Rule 10b-5 in that: (a) Defendants employed devices, schemes, and artifices to defraud; (b) Defendants made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) Defendants engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Lead Plaintiffs and the Class in connection with their purchase of Starbucks common stock during the Class Period.

**ANSWER**: Defendants admit that Plaintiffs purport to assert claims under §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5 promulgated thereunder.  Except as expressly admitted, Defendants deny the remaining allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

90.    In furtherance of their scheme and wrongful course of business, Defendants, and each of them, took the actions set forth herein.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

91.    During the Class Period, defendants Starbucks, Narasimhan, and Ruggeri engaged in a scheme and wrongful course of business and disseminated or approved the statements specified above, which they knew were false and misleading in that they contained

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 59
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

misrepresentations and/or failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants' misconduct was intended to, and did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Starbucks common stock; and (iii) cause Lead Plaintiffs and other members of the Class to purchase or otherwise acquire Starbucks common stock at artificially inflated prices.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

92.    As a direct and proximate result of the Defendants' wrongful conduct, Lead Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period in that, in reliance on the integrity of the market, they paid artificially inflated prices for Starbucks common stock. Lead Plaintiffs and the Class would not have purchased Starbucks common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements. Upon the disclosure that the Company had been disseminating false and misleading statements to the investing public, Lead Plaintiffs and the other members of the Class suffered financial harm.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

**COUNT II**
**For Violation of Section 20(a) of the Exchange Act**
**Against All Defendants**

93.    Lead Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

**ANSWER**: Defendants repeat and reallege their responses in the foregoing paragraphs as though fully set forth herein.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 60
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

94.     During the Class Period, the Individual Defendants participated in and oversaw the operation and management of Starbucks, and conducted and participated, directly and indirectly, in the conduct of Starbucks' business affairs. The Individual Defendants exercised control over Starbucks' operations and possessed the power to control, and did control, the specific activities which comprise the primary violations about which Lead Plaintiffs and the other members of the Class complaint.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

95.     The Individual Defendants acted as controlling persons of Starbucks within the meaning of §20(a) of the Exchange Act. By virtue of their senior management positions as officers and/or directors of Starbucks, their participation in and awareness of the Company's operations, and their personal knowledge of the statements filed by the Company with the SEC and/or disseminated to the investing public, these Defendants had the power to influence and control, and did influence and control, directly or indirectly, Starbucks' decision-making, including the content and dissemination of the allegedly false and misleading statements and other acts in furtherance of a fraudulent scheme.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

96.     In particular, as CEO and CFO, the Individual Defendants had direct or supervisory responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular business and/or operating practices and expenditures and deficient control environment giving rise to the securities violations alleged in Count I, and exercised that power.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 61
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

97. Starbucks had the power to control and influence the Individual Defendants and other Company executives through its power to hire, fire, supervise, and otherwise control the actions of its employees and their salaries, bonuses, incentive compensation, and other employment considerations. By virtue of the foregoing, Starbucks had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Individual Defendants, including the content of their public statements.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

98. As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiffs and other members of the Class suffered damages in connection with their purchases and/or acquisitions of Starbucks common stock during the Class Period when the relevant truth was revealed.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

99. By reason of the foregoing, Defendants violated §20(a) of the Exchange Act.

**ANSWER**: Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of the events at issue and any legal conclusions.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 62
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs demand judgment against Defendants as follows:

A. Declaring this action to be a class action properly maintained pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying Lead Plaintiffs as Class Representatives and Robbins Geller Rudman & Dowd LLP as Class Counsel;

B. Awarding compensatory damages in favor of Lead Plaintiffs and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including reasonable attorneys' fees, accountants' fees, and experts' fees, and other costs and disbursements; and

D. Awarding Lead Plaintiffs and other members of the Class such other injunctive or equitable relief, including disgorgement and/or the imposition of a constructive trust, that may be deemed just and proper by the Court.

**ANSWER:** To the extent any response is required to Plaintiffs' prayer for relief, Defendants deny each and every allegation contained herein.

## JURY DEMAND

Lead Plaintiffs hereby demand a trial by jury.

**ANSWER**: Defendants demand a trial by jury on all issues so triable.

Defendants reserve the right to amend their Answer as necessary once the precise nature of the relevant circumstances or events is determined through discovery.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that Defendants bear any burden of proof as to any of them, Defendants assert the following affirmative defenses:

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 63
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## FIRST AFFIRMATIVE DEFENSE

### (No Standing)

Plaintiffs' claims against Defendants are barred, in whole or in part, because Plaintiffs lack standing to assert their claims against Defendants.

## SECOND AFFIRMATIVE DEFENSE

### (Action Cannot Be Maintained as a Class Action)

Defendants contend that this lawsuit should not proceed as a class action on the grounds that, *inter alia*, Plaintiffs lack standing to represent the purported class, Plaintiffs are not typical of, and do not and cannot fairly and adequately represent the putative class, Plaintiffs cannot establish that questions of law or fact common to class members predominate over individualized issues, and because a class action will not be superior to other methods available for the adjudication of this controversy.

## THIRD AFFIRMATIVE DEFENSE

### (No Reliance)

Plaintiffs and members of the putative class would have acquired Starbucks stock even if, when acquired, they had known of the allegedly untrue statements of material fact, omissions of material fact, or misleading statements or other wrongful conduct upon which Defendants' purported liability rests.

## FOURTH AFFIRMATIVE DEFENSE

### (Truth on the Market Defense)

Certain matters alleged to be the subject of misrepresentations and omissions were publicly disclosed or were in the public domain, and as such were available to Plaintiffs, members of the putative class, and/or the securities markets.

## FIFTH AFFIRMATIVE DEFENSE

### (Safe Harbor Defense)

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 64
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Plaintiffs' claims are not actionable to the extent that the alleged statements of material fact, omissions of material fact, misleading statements, and/or other challenged statements made by Defendants fall within the Safe Harbor provisions of the Reform Act, as codified at 15 U.S.C. § 78u-5.

## SIXTH AFFIRMATIVE DEFENSE

### (Contribution)

Under principles of contribution and indemnity, persons or entities other than Defendants are wholly or partially responsible for the purported damages, if any, Plaintiffs and putative class members have sustained.

## SEVENTH AFFIRMATIVE DEFENSE

### (Comparative Fault and Equitable Allocation)

Any damages sustained by Plaintiffs or any member of the putative class must be rendered and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants under the principles of equitable allocation, recoupment, set-off, and comparative fault.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiffs and members of the putative class have failed to mitigate any damages they may have suffered. Any damages attributed to a purported loss in value of Starbucks securities is a result of the failure of Plaintiffs and members of the putative class to take reasonable steps to reduce their damages when they first learned or should have learned of any alleged misstatement or omission.

## NINTH AFFIRMATIVE DEFENSE

### (Intervening and Superseding Cause)

Any recovery for damages allegedly incurred by Plaintiffs and members of the putative class, if any, is limited to the percentage of responsibility of Defendants in proportion to the total

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 65
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

fault of all persons, whether or not named as parties to this action, who caused or contributed to Plaintiffs' alleged damages, if any, pursuant to the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. § 78u-4(f)(3)(A). The acts and practices of persons or entities not associated with Defendants and ongoing economic events constitute independent intervening and superseding causes of the alleged harm, if any, suffered by Plaintiffs or members of the putative class, relieving Defendants of any liability.

## TENTH AFFIRMATIVE DEFENSE

(Good Faith and Reasonable Care)

Defendants exercised reasonable care and acted in good faith, including good faith conformity with applicable Securities and Exchange Commission rules, regulations, and orders, and also did not directly or indirectly induce the act or acts constituting the alleged violations or causes of action. Defendants are therefore not subject to liability under the federal securities laws.

## ELEVENTH AFFIRMATIVE DEFENSE

(Assumption of the Risk)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and/or other members of the putative class had actual or constructive knowledge of the risks involved and thus assumed the risk that the value of Starbucks stock would decline if such risks materialized.

## TWELFTH AFFIRMATIVE DEFENSE

(Good Faith for Control Persons)

Each and every one of the Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act of 1934 acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 66
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

**THIRTEENTH AFFIRMATIVE DEFENSE**

(No Price Impact)

Plaintiffs' claims against Defendants are barred, in whole or in part, because the purported misstatements or omissions alleged in the Complaint did not affect the market price of Starbucks securities owned by Plaintiffs or other members of the putative class.

**FOURTEENTH AFFIRMATIVE DEFENSE**

(Failure to State a Claim)

The Complaint fails to state a claim upon which relief may be granted.

**PRAYER FOR RELIEF**

Defendants have insufficient knowledge or information upon which to form a belief as to whether there may be additional affirmative defenses available to them. Defendants expressly reserve the right to plead additional affirmative and other defenses that may become available or apparent during this litigation and/or required by any amendments to the Complaint.

WHEREFORE, Defendants pray that this Court enter judgment as follows:

1.    That judgment be entered in favor of Defendants;

2.    That Plaintiffs and the purported plaintiff class take nothing from Defendants by their Complaint, and that the same be dismissed with prejudice;

3.    For costs, attorneys' fees, expert witness fees, and court hearing fees incurred herein; and

4.    For such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Defendants hereby demand a jury trial on all issues so triable in this action.

Respectfully submitted this 23rd day of January, 2026.

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 67
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**K&L GATES LLP**

*/s/ Kari L. Vander Stoep*
Kari L. Vander Stoep, WSBA # 35923
Tyler K. Lichter, WSBA # 51090
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
Telephone: (206) 623-7580
(206) 623-7022 (fax)
kari.vanderstoep@klgates.com
tyler.lichter@klgates.com

**LATHAM & WATKINS LLP**

ANDREW B. CLUBOK (*pro hac vice*)
SUSAN E. ENGEL (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-3309
(202) 637-2201 (fax)
andrew.clubok@lw.com
susan.engel@lw.com

MICHELE D. JOHNSON (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: (714) 540-1235
(755) 540-8290 (fax)
michele.johnson@lw.com

WHITNEY B. WEBER (*pro hac vice*)
DANIEL R. GHERARDI (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
(415) 395-8095 (fax)
whitney.weber@lw.com

*Attorneys for Defendants Starbucks Corporation,*
*Laxman Narasimhan, and Rachel Ruggeri*

DEFS.' ANSWER TO
CONSOLIDATED COMPLAINT - 68
CASE NO. 2:24-cv-01362-JHC

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**